(No. 7187. March 17, 1945.)

STATE OF IDAHO, Respondent, v. WILLIAM K. HART, Appellant.

[157 P. (2d) 72.]

Harry S. Kessler for appellant.

Frank Langley, Attorney General, and Fred M. Taylor, City Attorney for Boise, for respondent.

SUTTON, D.J.—The appellant, hereinafter referred to

as the defendant, was arrested at about the hour of 12:30 A. M. on December 4, 1943, by two police officers of the City of Boise and taken to the city jail where he was locked up until about the hour of ten o'clock that morning when he was taken into the Police Court where in the meantime a complaint had been filed charging him with the crime of carrying concealed weapons contrary to the ordinances of the City of Boise; whereupon he was released on bail for appearance and trial in said court on the 7th day of December, 1943. On December 7th an amended complaint having been filed charging the defendant with the crime of carrying a single concealed weapon, to-wit: A 25 cal. Colts automatic pistol, he was tried and convicted of the offense charged in said amended complaint. From this conviction and the judgment thereon he appealed to the District Court of the Third Judicial District where he was again tried and convicted, and from that conviction and the judgment entered thereon, he has appealed to this court.

The defendant does not deny his guilt—that is, he does not deny carrying the concealed weapon—but he does make several contentions in connection therewith which, if sustained, entitled him to a reversal of the judgment appealed from, the first of these contentions being that the police court did not have jurisdiction to convict him or enter the judgment upon such conviction. This contention is evidently based upon the dual proposition that the Ordinance under which defendant was sought to be charged is unconstitutional, and, further, that his arrest was unlawful in that he was arrested without a warrant in the night time for an alleged misdemeanor not committed in the presence of the arresting officer.

Section 11, Article I of the Constitution of Idaho in effect guarantees the people of the state the right to bear arms for their security and defense; but it also provides the Legislature shall regulate the exercise of such right. This court, in the case of *In re Brickey,* 8 Ida. 597, 70 P. 609, in discussing this constitutional provision declared that under it the Legislature has no power to prohibit a citizen from bearing arms, whether within or without the corporate limits of cities, towns and villages. It then said "The Legislature may, as expressly provided in our State Constitution, regulate the exercise of this right, but may not prohibit it. A statute prohibiting the carrying

of concealed deadly weapons would be a proper exercise of the police power of the State." In the more recent case of *State v. Woodward*, 58 Ida. 385, 74 P. (2d) 92, 114 A.L.R. 627, the court speaking through Mr. Justice Ailshie, after quoting the Brickey case, said: "The Legislature only has the power to 'regulate the exercise of this right', that is, among other things, it may prohibit carrying concealed weapons, or prescribe the kind or character of arms that may or may not be kept, carried, or used, and various other things of a regulatory character." In the exercise of that right the Legislature has prohibited the carrying concealed certain specified weapons "or any other deadly or dangerous weapon within the limits or confines of any city, town or village." (17-3102, I.C.A.) Section 2, Article XII, of the Constitution of Idaho provides: "Any county or incorporated city or town may make and enforce, within its limits, all such local, police, sanitary and other regulations as are not in conflict with its charter or with the general laws." Under such constitutional and statutory provisions it is generally held to be a reasonable exercise of the police power of a municipality to prohibit the carrying of concealed dangerous or deadly weapons (68 C.J. 9; *Ex parte Cheney* (Cal:), 27 P. 436). Therefore the ordinance of the city of Boise under which the defendant was prosecuted is not unconstitutional insofar as it prohibits the carrying of concealed dangerous or deadly weapons. And the Police Court had jurisdiction of the offense of which the defendant was charged. And since the record discloses that at the time he appeared for trial and was tried, a formal written complaint charging him with the offense had been filed and a warrant for his arrest issued thereon, and that defendant had been arrested and released upon bail, that court also had jurisdiction of the person of the defendant. Thus the objection of the jurisdiction of the Police Court is without merit.

Defendant's other four specifications of error we believe can be consolidated into one general proposition: that is, that defendant's arrest was unlawful and the seizure of his gun and blackjack, sap or billy, was likewise unlawful, and that both the Police Court and the District Court erred in refusing to suppress that evidence and return it to him. In disposing of this consolidated question, it is necessary to examine at some length the facts and circumstances attending the defendant's arrest.

It appears the police officers who arrested the defendant were directed by radio from Police Headquarters to go to the Gremlin's Roost, a so-called club in the Boise Hotel, entrance to which is from the hotel lobby, to investigate a charge that someone was swinging a billy. This they did, and on arrival encountered in the hotel lobby a number of U. S. Army officers including one Military Police Officer, two uniformed city policemen and several civilians from whom they inquired what was going on and were informed by the three Army Officers that a man in the Gremlin's Roost had threatened them with a blackjack. Shortly thereafter the door to the club opened and one of the Army Officers said, "That's the man there." Whereupon City Detective Flood, who was acquainted with the defendant, recognized him and said, "Just a minute, Bill. We have had a complaint against you for threatening these men with a blackjack. Have you got it on you?", to which the defendant answered, "Yes, in my left hip pocket." Whereupon Officer Flood said, "We will have to arrest you" and according to the State's evidence, at this juncture the defendant raised his arms at right angles to his body so that Officer Flood might obtain the blackjack, billy or sap, as it has been variously described, and as the defendant's coat swung open it exposed a 25 cal. Colts automatic pistol in his right vest pocket which, together with the blackjack, was taken from the defendant by Officer Flood and the defendant was taken to the city jail and confined as herein before stated. At this point it should be noted there is some variation in the recital as to just what was said and when it was said between the two officers and the defendant near the door of the club, both as between the respective witnesses and as between the statements of each witness on direct and cross-examination; and the foregoing quotations disclose only one of those versions, being the testimony of Officer Flood on cross-examination.

It is admitted by the State that at the time of the arrest the officer had no warrant, no complaint had been filed, and that the arrest was made in the night time. The State, at least by failure to deny, in effect admits that in the mid-afternoon of the day previous the defendant had received an anonymous telephone call wherein he was told "to keep my nose out of the slot machine business or my body would be found out in the brush"; that upon receipt

of this message the defendant called the Chief of Police and the Sheriff's Office in an endeavor to obtain a permit to carry a gun for his protection; that he was informed by the Chief of Police he had no such authority, and was informed by the Sheriff's Chief Deputy that only the Sheriff could grant him such a permit (Sec. 17-3102, I.C.A.) and he was absent from the city and would be for several hours. It is suggested that under these circumstances (the defendant carrying a gun for his own protection) his action was not criminal because it fails to satisfy the requirement that there shall be a union of act and intent. This contention appears to be contrary to the authorities (68 C.J. 17, Sec. 13; *Sheperd v. State* (Okla.), 192 P. 235.)

 Section 19-603, I.C.A., sets forth clearly and fully the times and circumstances under which any peace officer may make an arrest, as follows:

"A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

1. For a public offense committed or attempted in his presence.

2. When a person arrested has committed a felony, although not in his presence.

3. When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it.

4. On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested.

5. At night, when there is reasonable cause to believe that he has committed a felony."

From which it would appear that in the case of misdemeanors, an arrest without a warrant can only be made when the offense is committed or attempted in the officer's presence.

While the Attorney General in his brief suggests that if the trial judge had not excluded the statement by the officers of what they had been told occurred in the club, it might appear the arrest was lawfully made under sub-

division 3 of the above statutory provision, just what that statement would have disclosed we, of course, do not know. However, it seems unlikely, if not impossible, that it would have brought the arrest within that provision (*State v. Roby*, 43 Ida. 724, 254 P. 210). It follows that unless it can be said the offense of carrying concealed dangerous or deadly weapons was committed in the presence of the arresting officers, the arrest was unlawful and the seizure of the gun and blackjack unauthorized, and they should be suppressed and returned to the defendant provided he made timely motion for such relief (*State v. Conner*, 59 Ida. 695, 89 P. (2d) 197; *State v. Arregui*, 44 Ida. 43, 254 P. 788).

There seems no good reason why the language of sub-division 1 of Sec. 19-603, I.C.A., should be given such an interpretation as will hinder peace officers in their conscientious and diligent efforts to enforce the law and keep the peace. And, notwithstanding the existence of some authorities to the contrary, it seems to us that an individual who is in fact violating the law in the immediate presence of an officer and freely and voluntarily admits the facts constituting such violation, is committing an offense in the officer's presence within the meaning of said statutory provision and may be lawfully arrested without a warrant. Searches and seizures made incidental to a lawful arrest are not prohibited as being unreasonable, and the evidence seized is not thereby rendered inadmissible (*State v. Conner*, supra). It may be argued that defendant only admitted the possession of the blackjack, billy or sap, and that it was not such a weapon as is covered by the provisions of the ordinance. It is true it is not one of the weapons therein specifically mentioned; but, in addition to those, all other dangerous and deadly weapons are included. The defendant urges that this particular instrument was neither dangerous nor deadly. At the same time he urges that solely by reason of his possession and exhibition of this instrument he was able to avoid and prevent a pre-arranged and deliberated assault upon him by four U. S. Army officers, which would indicate that those gentlemen, who are not entire strangers to dangerous weapons, did not regard this blackjack or billy as lightly as does the defendant. It cannot be denied that such a weapon may be and is dangerous and even deadly, depending upon the manner in which it is used.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆ The arrest being legal, the seizure was not unwarranted and the motion to suppress was properly denied.

▆▆ The court below did not err in refusing to suppress the evidence and the fine should be reduced from $100 to $25. There being no reversible error in the record, the judgment as thus modified is affirmed.

Budge and Givens, JJ., concur.

AILSHIE, C.J, Dissenting—I dissent, for the following reasons:

(1) The ordinance of the City of Boise, reading as follows:

"Every person not being a sheriff, deputy sheriff, constable or other police officer, who shall carry or wear within the corporate limits, any bowie knife, pistol or sword cane, sling shot, metallic knuckles, or other dangerous or deadly weapons, concealed, unless such persons be traveling or setting out on a journey, shall be deemed guilty of a misdemeanor. Such persons and no others shall be deemed travelers, within the meaning of this section, as may be actually engaged in making a journey at the time." (Boise City Code, 1936, sec. 4-1202, p. 148).

is in excess of the authority of the city of Boise and violates the constitution, Art. 1, sec. 11, and also runs counter to the provisions of sec. 17-3102, I.C.A.

(2) The record is complete and uncontradicted, to the effect that Hart was not deliberately or purposely violating any provision of the city charter or the state law. It is undisputed and in fact conceded, that in good faith he attempted to procure a permit from the sheriff, as provided by statute (sec. 17-3102, I.C.A.) ; and that he did everything the law required him to do, looking to the securing of such permit. It stands undisputed, that his life had been threatened by someone presumably interested in slot-machine operation in Boise City.

The right to defend one's person is not dependent upon a permit from anyone else but the one being attacked or threatened to be attacked. It would be utter folly to talk about requiring a man to get a permit to carry a gun con-

cealed to defend himself, when he is suddenly attacked by a ruffian with threats to take his life. What he needs is the right to act then and, unless he has a gun or other weapon with which to offer equal persuasive peril, his right of self-defense would vanish and so would he.

(3) The record in this case is bristling with circumstances and evidence which convince me that the charge against defendant was pre-planned by some one or more of the persons who were in the "Gremlin's Roost" on the occasion when it is charged he (defendant) threatened an army officer with a blackjack. After making the charge, that he had threatened an army officer with a blackjack, the complaint was finally made against him for *another offense, namely, carrying a concealed weapon.* It is admitted that the discovery of the possession of the concealed weapon was made only *after the arrest had been made on the charge of threatening to use a blackjack.* It was done without authority and without consent of the party searched. Moreover, it is very significant, that upon the trial of this case in the district court no one of the army officers, supposed to have been threatened, was produced as a witness, although their headquarters (Gowen Field) is only a short distance beyond the Boise City limits.

After a careful examination of this entire record, I am convinced that the defendant has not had the fair and impartial trial which is guaranteed by the constitution.

Holden, J., authorizes me to say that he concurs in this dissent.