SHIPLEY ET AL. *v.* STATE

(Two Appeals in One Record)

[No. 88, September Term, 1965.]

264

*Decided June 27, 1966.*

Submitted on brief by *Howard G. Reamer* for the appellants.

Submitted on brief by *Thomas B. Finan, Attorney General, Fred Oken, Assistant Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Donald Needle, Assistant State's Attorney,* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Jesse A. Shipley, Sr. and Ronald E. Shipley who are brothers, and Alex C. Shipley, their first cousin, were tried together by Judge Foster sitting without a jury in the Criminal Court of Baltimore, and Jesse Shipley was convicted of wearing or carrying a dirk knife concealed on or about his person contrary to Code (1957), Art. 27, § 36, and of being a rogue and vagabond contrary to Code (1957), Art. 27, § 490, and Ronald and Alex Shipley were convicted of being rogues and vagabonds. The appeals which followed were remanded to the lower court under the decisions in *Schowgurow v. State*, 240 Md. 121, and subsequent cases. The indictment as to Ronald was dismissed and the present appeals are by Jesse and Alex.

The facts and circumstances that gave rise to these convictions could have been found by the trier of fact from the testimony to be these: The three men were parked at the curb, after midnight, in Jesse's car facing west on Manhattan Avenue fifty feet east of Park Heights Avenue. Jesse was in the driver's seat, Ronald was with him on the front seat and Alex was in back. The Beth Jacob Synagogue was some seventy-five feet away. Officers Raffensberger and Thomas of the Baltimore police force were cruising the Pimlico area in an unmarked car in civilian clothes because there had been a rash of crimes, including burglaries, in that neighborhood. The officers stopped their car some five hundred feet from the Shipley car and watched it for about ten minutes. Each of the occupants was observed to peer at the Synagogue from time to time and it was seen that the car bore temporary license tags. After the car remained stationary for no apparent reason for a number of minutes, the officers decided to investigate and Officer Raffensberger drove the police car along side of the Shipley car and Officer Thomas, leaning out of the window, shone his flashlight on his police badge, identified himself vocally as a policeman and asked Jesse Shipley for his registration card and driver's license. Jesse immediately got out of his car and approached the police car, standing in such a way as to block Officer Thomas' view of the Shipley car. Seeing this, Officer Raffensberger got out of the police car and walked to the pavement in order to look in the windows of the Shipley car. There

was sufficient illumination from a light at the dashboard and the dome light of the police car for him to observe a dirk knife on the floor partially protruding from under the front seat on the driver's side. He also saw on the floor of the back of the car, resting under Alex's feet, a four-foot length of board studded with sixty-three new nail points, as well as a roll of twine, a homemade cloth mask and two pairs of gloves. Officer Raffensberger, as yet unaware that Officer Thomas' investigation had established that Jesse was the owner of the car, then ordered Ronald and Alex out of the car and told them they were under arrest for "investigation of possession of a deadly weapon." The officers then asked Jesse for permission to look into the trunk of the car and both testified (the witnesses were sequestered) that Jesse not only freely gave permission but voluntarily produced the key and himself opened it. In the trunk were a box of mechanic's tools and a pinch bar, as well as (in a raincoat belonging to Jesse) two lady's stockings and two noose-shaped cord devices suitable for garrotting both the necks of laundry bags and of humans (a microphone cord on a taxi radio used for the latter purpose was held in *Bennett and Flynn v. State*, 237 Md. 212, to be a dangerous weapon).

Jesse's version of the presence of the three on Manhattan Avenue, told to the officers that night, was that they had pooled their resources, bought fifty cents worth of gasoline and, for no particular reason, had driven to northwest Baltimore and "just stopped to talk." Ronald said the car broke down, and Alex said he did not know why they had stopped. Only Alex took the stand to testify on the merits (Jesse took the stand for "the limited purpose of determining whether the arrest and search was based on probable cause" and to deny that he had given permission to open the trunk and that he had opened it). Alex testified they stopped to drink coffee they had bought at a place three or four blocks away, a place he could not identify or locate. He knew nothing of the contents of the trunk and had not attempted to conceal the nail-studded board with his feet. Three different versions of why the board was in the car, none plausible, were given to the police by the occupants of the car.

Appellants contend (1) that no misdemeanor was committed

in the presence of the officers so that the police had no right to accost them and peer into the car to see incriminating objects, (2) the arrests and the subsequent search were illegal, and (3) that the evidence was insufficient to sustain the convictions of being rogues and vagabonds. It has long been recognized that in an appropriate environment and under appropriate circumstances if it is reasonably necessary to enable a police officer to determine whether a person's conduct is unlawful, he may accost or stop that person and in the process may seek the citizen's identity and his cooperation and may verify the information given him. (*Cf.* Code (1957), Art. 66½, § 97 [driver's license must be carried at all times and is subject to examination upon demand by a uniformed officer of the law], and cases upholding the statute such as *Bradley v. State,* 202 Md. 393, *Sharpe v. State,* 231 Md. 401, *cert. denied,* 375 U. S. 946, and *Sharpe v. Warden, Baltimore City Jail,* 225 F. Supp. 738.) See *Cornish v. State,* 215 Md. 64, in which a police officer in plain clothes approached the driver of an automobile momentarily stopped because the police, suspecting him to be a numbers operator had blocked its exit from an alley, exhibited his police badge and asked to see the driver's license. The driver opened the glove compartment with the car key and the officer and another who had joined him looked into the car from the street and saw numbers slips and money in the compartment. The driver took the license from the compartment and showed it to the officer, who remarked that it had been revoked. The driver then admitted this. At that point he was arrested and the slips and the money were seized. The Court, holding that the accosting of the driver and the observations of the contents of the car were lawful, said (p. 67) :

> "We think that the record before us makes it plain that there was no arrest until after the policeman had seen appellant driving, saw that his license was invalid, heard him admit it had been revoked, and saw the lottery slips in his possession. The arrest, therefore, was for misdemeanors committed in the officers' presence, and valid. *Griffin v. State,* 200 Md. 569; *Blager v. State,* 162 Md. 664."

and (at p. 68) : "One is not arrested when he is approached by a police officer and merely questioned as to his identity and actions. This amounts to no more than an accosting." Cited in support of the latter proposition were *Blager v. State,* 162 Md. 664, 665-66, and *Robinson v. State,* 200 Md. 128, and 37 Mich. L. Rev. 311, 313.[1]

We think there is no real doubt that the police officers were justified in the environment, at the time and under the circumstances, in accosting the appellants and in looking into their car from the street, where obviously they lawfully were, to see if any illegal article was in it.

It is established that if a dangerous weapon is concealed in an automobile in such proximity to the owner as to make it available to him for his immediate use it is concealed "upon or about his person" in violation of the Maryland statute, Code (1957), Art. 27, § 36, against wearing or carrying a concealed weapon. *Corbin v. State,* 237 Md. 486; *Webster, Jr. v. State,* 228 Md. 481; *Davis v. State,* 202 Md. 463; *Wood v. State,* 192 Md. 643.

A dirk knife is in terms proscribed by that statute and such a knife was in such proximity to Jesse Shipley while he was in the driver's seat as to make it readily available for his then

---

1. The Cornish case is but one of a number. See Busby v. United States, 296 F. 2d 328, 331 (9th Cir. 1961), *cert. denied,* 369 U. S. 876 (1962) ("Considering the hour of the morning, the information received and all the surrounding circumstances, the officers were perfectly justified in making inquiries of the appellants and in asking them to step out of the automobile."); United States v. Mitchell, 179 F. Supp. 636 (D. D. C. 1959); State ex rel. Branchaud v. Hedman, 269 Minn. 375, 130 N. W. 2d 628 (1964), petition for cert. dismissed, 381 U. S. 907 (1965); Hargus v. State, 58 Okla. Crim. 301, 306, 54 P. 2d 211, 214 (1935) ("[It] is not unlawful for a peace officer * * * to make a reasonable inquiry of strangers or others * * *."); Pena v. The State, 111 Tex. Crim. 218, 12 S. W. 2d 1015 (1928). See Foote, *The Fourth Amendment: Obstacle or Necessity in the Law of Arrest?,* 51 J. Crim. L., C. & P. S. 402, 407 (1960) ("No doubt many people feel compelled to stop and answer when questioned by an officer, and the unavoidable ambiguity in such a situation operates to the officer's advantage.") And see LaFave, Arrest: The Decision to Take a Suspect into Custody, 344-47 (1965).

immediate use; so the crucial question is whether the trier of facts was justified in finding that the knife was concealed. *Cf. Veney v. State,* 227 Md. 608. We think that he was. By a recognized test a weapon is concealed if it is so situated as not to be discernible by ordinary observation by those near enough to see it if it were not concealed who would come into contact with the possessor in the usual associations of life, but absolute invisibility is not required; since ordinary observation does not extend to a search unusually careful, thorough or detailed, made because of suspicion that contraband which is not visible by ordinary observation may in actuality be present. 94 C. J. S. *Weapons* § 8 (e); 56 Am. Jur. *Weapons and Firearms* § 10, pp. 997-98; Annot., Concealed Weapon, 43 A. L. R. 2d 492, 510-15; and see *Kennedy v. State,* (Neb.), 105 N. W. 2d 710.

Here the blade of the knife was visible when the driver of the car was not sitting in the car but certainly it was a permissible inference for the trier of the facts that when he was in the driver's seat the knife would have been shielded at night from ordinary observation by his legs and feet, particularly when there was another pair of legs and feet obscuring the floor of the front of the car. *Cf. Brookhart v. State,* 238 Md. 625, and *State v. Renard* (Mo.), 273 S. W. 1058, and see *Kennedy v. State, supra.*

When Officer Raffensberger saw the knife he was justified in concluding that a misdemeanor had been committed in the presence of the police—the carrying of a concealed weapon— and thus was justified in making the arrests. This being so, an immediate search of the car and the seizure of the articles therein heretofore enumerated were proper and lawful, aside from the fact that various incriminating articles were found by virtue of the consent of the owner of the car. *Bradley v. State,* 202 Md. 393; *Cornish v. State, supra; Knotts v. State,* 237 Md. 417.

The contention of the appellants that the evidence lawfully seized did not justify their convictions of being rogues and vagabonds must be rejected. Code (1957), Art. 27, § 490, provides that if a person apprehended shall have any "* * * implement, at places and under circumstances from which an in-

tent may be presumed feloniously to break and enter into" named buildings "or shall have upon him any * * * bludgeon, or other offensive weapon" also at places and under circumstances from which it may be presumed an intent feloniously to assault any person, he or she shall be deemed a rogue and vagabond. The place, relatively isolated and deserted after midnight, in proximity to the Synagogue, closed at that hour, and the implausible stories of why they were where they were told to the police by the appellants, permitted an inference under the statute that the mechanic's tools, the pinch bar and the nail studded board were had by them to be used to break into a building, as in *McCray v. State*, 236 Md. 9, and the knife, the garrotting cords and the masks similarly presented a likelihood of use at any early moment in holdups, mugging and yoking.

*Judgments affirmed.*