596 P.2d 417

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Robert Loren McNARY,
Defendant-Appellant.**

No. 12140.

Supreme Court of Idaho.

June 6, 1979.

David Lee Posey, Payette, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thompson, Deputy Atty. Gen., P. Mark Thompson, Asst. Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Justice.

Defendant appellant Robert Loren McNary was convicted by a jury of carrying a concealed weapon in violation of I.C. § 18–3302 and obstructing a public officer in violation of I.C. § 18–705. He contends on appeal that the trial court erred in admitting a zippered case containing a pistol into evidence and in refusing to dismiss the concealed weapon charge, asserting that there was no evidence of an illegal carrying of a concealed weapon. He further argues that the court erroneously refused to instruct the jury that his carrying of a concealed weapon upon the premises where he lived was not illegal. Finding these assignments of error without merit and the other assignments likewise not a basis for reversal, we affirm McNary's convictions.

In the early morning hours of October 16, 1974, Officer Jeff Harris, of the Fruitland Police Department, was patrolling on foot in the city of Fruitland when he observed the defendant McNary driving a borrowed vehicle at a high rate of speed. Officer Harris testified that the defendant was observed to skid to a stop at a stop sign, accelerate at a high rate of speed down the wrong side of the street, and turn onto an adjoining street "skid[ding] completely sideways in the intersection." Because Officer Harris did not have access to his patrol car he was unable to follow McNary.

Officer Harris had previously observed McNary's own car parked in town. Shortly after the foregoing events he received a telephone call from the defendant McNary indicating that his car had been stolen. Officer Harris advised McNary that he didn't think his car had been stolen because he had just observed it parked downtown. McNary told Officer Harris over the phone that he wanted to be sure that it hadn't been stolen, so Officer Harris agreed to take McNary downtown to show him his car. When Officer Harris arrived at McNary's residence to pick him up, McNary came out of the house carrying a .22 caliber pistol and proceeded to get into the passenger side of Officer Harris's vehicle. McNary appeared to be intoxicated according to Officer Harris, and stated that he felt he needed his pistol because the "mafia had stolen his vehicle." While Officer Harris was driving the defendant to the place where the defendant's car was parked he stated several times to McNary that he seemed intoxicated and should not attempt to drive.

"I told him I wanted to take him back home and he could come back and get his car in the morning. He just refused and said he was going to drive it home. . . He got out of my patrol car and took the .22 with him, walked over to his car and removed the keys from his pocket and unlocked the door and got in it and started it up, . . . put it in gear and backed it away from the parking place and started driving down the street."

Officer Harris followed McNary and attempted to stop him by turning on the overhead flashing lights on his patrol car, but to no avail. McNary drove to his residence, parked his car in the driveway and stepped out of the vehicle. Officer Harris got out of his car and approached McNary who was getting out of his car. Officer Harris advised him that he was under arrest for driving while intoxicated, and as he did, the defendant "bent back over and into his vehicle and reached in under the front seat and pulled out a case," which Officer Harris later discovered contained another gun, a 9 mm. pistol. The defendant held the case containing the gun in front of him and "turned away from me and started walking off." Having advised the defendant that he was under arrest, Officer Harris attempted to detain him, and when he did the defendant jerked away and started swinging at him. A struggle ensued for several minutes until Officer Harris was able to subdue McNary with the aid of mace and then handcuffed him.

McNary was charged with driving while under the influence of intoxicating beverages or drugs in violation of I.C. § 49–1102, carrying a concealed weapon within city limits in violation of I.C. § 18–3302, and obstructing an officer in violation of I.C.

§ 18–705. A jury convicted him of the latter two offenses. He has appealed, making numerous assignments of error, of which only the following require extended discussion.

The defendant first assigns as error the overruling of hearsay objections to testimony given by police officer Harris. Officer Harris related on the witness stand what he told defendant when he picked him up at his house and drove him to the Amco station where the officer believed defendant's car was parked. Defendant objected to the following testimony given by Harris:

"A. I then told him that . . .

"MR. POSEY: I object as to what he told him as being hearsay.

"THE COURT: Overruled. Go ahead.

"A. I advised him that I did not think he needed the gun in his condition. He laid the gun down on the car and I picked it up and unloaded it and laid it back down. We then proceeded down to the Amco service station downtown where I had seen his car parked earlier.

"Q. What happened when you arrived at the Amco service station.

"A. I asked him if that was his car and he said, 'Yes, it was.' He then stated he was going to drive home.

"Q. Did you say you were going to give him permission to drive that car home?

"MR. POSEY: I object to that, as to what the police officer said. It can only be hearsay, self-serving statement.

"THE COURT: Overruled.

"A. I had told him several times on the telephone before we went down to the station and several times I told him that I did not want him to drive a motor vehicle because I felt he was intoxicated."

In a closely related assignment of error, defendant contends that the trial court erred in refusing to grant defendant's proposed instruction number 4 which would have instructed the jury that they were not to consider the above statements of Officer Harris for the truth of the matter contained therein. The defendant would have had the jury instructed that the conversation was admitted merely "to allow you to hear a continuous flow of evidence." Under most circumstances such a cautionary instruction would be necessary in order to insure that hearsay evidence admitted for a limited purpose would not be considered by the jury as proof of the matters contained therein.

■ In our view, neither of these assignments of error point to matters which, if error, would have constituted reversible error. The out-of-court statements which the witness Harris related and to which defendant in this case has objected were not such, we believe, that the jury would either have believed that they were evidence from which the defendant could be convicted, or were such as would carry any substantial weight in the minds of the jurors. This conclusion is supported by the fact that the jury acquitted defendant of the charge of driving his vehicle while intoxicated. Clearly, no prejudice can be said to have flowed from Officer Harris repeating his out-of-court statements relating to his belief that the defendant was intoxicated.

■ The other statement in question concerned the .22 caliber pistol. However, in view of the amount of proper evidence indicating that defendant did carry a different weapon, a concealed 9 mm. automatic pistol, admission of Harris's statement referring to the .22 caliber pistol, if error at all, was harmless. "Non-prejudicial error does not constitute ground for reversal." *State v. Darrah*, 92 Idaho 25, 27, 435 P.2d 914, 916 (1968); I.C. § 19–3702.

■ McNary contends that the trial court erred in admitting into evidence over his objection State's Exhibit 2, being the zippered case and the 9 mm. pistol which was in it. We disagree.

■ It is illegal under I.C. § 18–3302 [1] for one without a permit and not within the

1. "18–3302. CONCEALED AND DANGEROUS WEAPONS—POSSESSION AND EXHIBITION—SALE TO MINORS.—If any person,

excepting officials of a county, officials of the state of Idaho, officials of the United States, peace officers, guards of any jail, or any officer

exempted class of persons to "carry concealed *upon or about his person,* any . . . pistol, revolver, [or] gun . . . within the limits or confines of any city." (Emphasis supplied.) One carries a weapon "upon or about his person" not only when he physically is carrying it in his clothing or in a handbag of some sort, but also when he goes about with the weapon in such close proximity to himself that it is readily accessible for prompt use. *See, e. 'g., Wilson v. United States,* 91 U.S.App.D.C. 135, 198 F.2d 299 (1952); *Brown v. United States,* 58 App.D.C. 311, 30 F.2d 474 (1929); *Williams v. Commonwealth,* 261 S.W.2d 807 (Ky. 1953); *Shipley v. State,* 243 Md. 262, 220 A.2d 585 (1966); *State v. Conely,* 280 Mo. 21, 217 S.W. 29 (1919); *State v. McManus,* 89 N.C. 555 (1883); *Schraeder v. State,* 28 Ohio App. 248, 162 N.E. 647 (1928); *Spears v. State,* 112 Tex.Cr.R. 506, 17 S.W.2d 809 (1929); Annot., 43 A.L.R.2d 492, 502–09 (1955). The general test of concealment is whether a weapon is so carried as not to be discernible by ordinary observation. *See, e. g., People v. Zazzetti,* 6 Ill.App.3d 858, 286 N.E.2d 745 (1972); *Shipley v. State,* 243 Md. 262, 220 A.2d 585 (1966); *State v. Bordeaux,* 337 S.W.2d 47 (Mo.1960); *State v. Pettit,* 20 Ohio App.2d 170, 252 N.E.2d 325 (1969); Annot., 43 A.L.R.2d 492, 512–14 (1955).

■ At the time that the state offered the 9 mm. pistol into evidence there is no question but that the state had laid an adequate foundation to show that the 9 mm. pistol, located inside the zippered case, had been removed by the defendant from underneath the seat of his car and carried by him as he attempted to avoid being arrested by Officer Harris. It was not nec-

essary that every element of the crime be established prior to admission of Exhibit 2 into evidence.

"The test of relevancy, which is to be applied by the trial judge in determining whether a particular item or group of items of evidence is to be admitted is a different and less stringent one than the standard used at a later stage in deciding whether all the evidence of the party on an issue is sufficient to permit the issue to go to the jury. A brick is not a wall." McCormick's Handbook of the Law of Evidence, § 185, p. 436 (E. Cleary, 2d ed. 1972).

The state having established that the exhibit offered was the same encased pistol which the defendant had removed from his car and was carrying when he was arrested by Officer Harris, the trial court did not err in admitting Exhibit 2, zippered case and the pistol, into evidence.

■ Appellant's objection to Exhibit 2, *i. e.,* that there was no evidence of an illegal or unlawful carrying of State's Exhibit 2 is appropriately addressed in conjunction with appellant's assignment of error that the trial court erred in denying defendant's motion to dismiss the charge of carrying a concealed weapon at the close of the state's evidence. This alleged error is closely related to another assignment of error asserted by appellant in which he alleges that the trial court erred in refusing to give the following instruction:

"DEFENDANT'S PROPOSED
INSTRUCTION NO. 1

"You are instructed that it is not a crime for a person to carry a pistol, revolver, or

of any express company on duty, shall carry concealed upon or about his person, any dirk, dirk knife, bowie knife, dagger, sling shot, pistol, revolver, gun or any other deadly or dangerous weapon within the limits or confines of any city, town or village, or in any public assembly, or in any mining, lumbering, logging, railroad or other construction camp, public conveyances or on public highways within the state of Idaho, or shall, in the presence of one (1) or more persons, exhibit any deadly or dangerous weapon in a rude, angry or threatening manner, or shall have or carry such weapons upon or about his person when intoxicated or under the influence of intoxicating drinks, or

shall, directly or indirectly, sell or deliver, loan or barter to any minor under the age of sixteen (16) years any such weapon without the consent of the parent or guardian of such minor, he shall, upon conviction, be punished by a fine of not less than $25.00 nor more than $200.00, and by imprisonment in the county jail for a period of not less than twenty (20) days nor more than ninety (90) days: provided, however, that any person shall be allowed to carry any of the above weapons in the places mentioned above on securing a permit from the sheriff of the county after satisfying the sheriff of the necessity therefor."

gun, concealed or otherwise, from his own automobile parked on the premises where he is living to the house in which he is living even though his premises is located within the city limits."

Instead, the trial court gave the following:

### "INSTRUCTION NO. 16

"The carrying of a concealed weapon as a mere incident of its transportation from one place to another is not an offense if the purpose of transporting the same is for an innocent reason and does not go beyond the purpose of transporting the same."

The essence of appellant's argument in support of his motion to dismiss and his proposed Instruction Number 1 was that I.C. § 18–3302, prohibiting the carrying of a concealed weapon, does not apply to a person when he is on his own premises. We do not see any justification or authorization for reading into the statute such an all-encompassing exception. Instruction Number 16,[2] which was given by the court, was adequate to present to the jury the defendant's argument that his transportation from his automobile to the house in which he was living was not a criminal offense. In fact, Instruction Number 16 was probably more favorable to the defendant than the instruction which he requested. Therefore, we conclude that the trial court did not err in refusing to give McNary's proposed instruction number 1 as appellant has alleged. Likewise, we conclude that from the manner in which Officer Harris testified that the appellant removed the encased gun from beneath the seat of his car and carried it toward his house there was sufficient circumstantial evidence to warrant the trial court's denial of the appellant's motion to dismiss at the close of the state's case.

McNary also contends on appeal that the trial court erred by refusing two other proposed instructions, by submitting questions of law to the jury, and by admitting certain testimony over objection. We have reviewed the record and find, in each case, either that the assignment of error is without merit or that any error committed was clearly harmless and therefore not a basis for reversal. Accordingly, the judgment or order of commitment entered below is affirmed.

SHEPARD, C. J., concurs.

DONALDSON, J., concurs in the result.

McFADDEN, Justice, concurring in part and dissenting in part.

I concur in the majority opinion insofar as it affirms the conviction of obstructing a police officer. I dissent, however, from the affirmance of defendant's conviction of carrying a concealed weapon in violation of I.C. § 18–3302.

I.C. § 18–3302 prohibits the carrying without a permit of a concealed weapon "upon or about" one's person "within the limits or confines of any city . . . or on public highways." The criminal complaint filed against the defendant charged him in the alternative: carrying the concealed weapon within the city limits of Fruitland *or* carrying the concealed weapon on the public highway. This complaint was read to the jury in jury instruction number four. Defendant's conduct while in his automobile driving on the public streets was therefore an issue before the jury as an element of the crime charged.

Regarding the defendant's "carrying" of the weapon in his automobile, the majority opinion states the general rule: "One carries a weapon 'upon or about his person' not only when he physically is carrying it in his clothing or in a handbag of some sort, but also when he goes about with the weapon in such close proximity to himself that it is readily accessible for prompt use." The latter part of this rule combines two separate and distinct factual elements. These elements are: (1) the weapon must be in

---

2. Instruction No. 16, which was taken substantially from defendant's Proposed Instruction No. 2, was given over the objection of the state. It was not objected to at trial by the defendant, nor is the giving of it assigned as error on appeal. By affirming the judgment of the trial court we do not implicitly approve Instruction No. 16.

close physical proximity to the defendant *and* (2) the weapon must be readily accessible for prompt use. The former does not necessarily imply the latter. And the State must prove *both* beyond a reasonable doubt.

Focusing upon the presence of the weapon in the defendant's car, Officer Harris testified that the defendant "bent back over and into his vehicle and reached in under the front seat and pulled out a case." There was no evidence whatever to prove or even suggest that the weapon was readily accessible to the defendant while he was driving the automobile. The State offered no evidence as to the physical dimensions of the automobile the defendant was driving, or as to the amount of room underneath the seat, or as to the location of the case under the seat, or as to any other facts tending to show that the weapon was "readily accessible for prompt use." Failing to prove this element of accessibility, the State failed to carry its burden of proof that the defendant carried the weapon "upon or about" his person during the time he was driving the automobile. *People v. Liss,* 406 Ill. 419, 94 N.E.2d 320 (1950); *People v. Niemoth,* 322 Ill. 51, 152 N.E. 537 (1926); *Williams v. Commonwealth,* 261 S.W.2d 807 (Ky.1953); *Commonwealth v. Nunnelley,* 247 Ky. 109, 56 S.W.2d 689 (1933); 43 A.L.R.2d 492, 541–44.

The State also failed to show that defendant carried the weapon from his automobile towards the home with an unlawful purpose. Jury instruction no. 16, referred to above in the majority opinion, informs the jury that no crime can be committed so long as the concealed weapon is being transported for innocent purposes. Yet the State offered not a shred of evidence concerning any unlawful purpose in defendant's carrying his own gun from his car to his house. The arresting officer testified that defendant "just carried it [the weapon] in front of him and he just turned away from me and started walking off." No evidence was introduced showing that defendant attempted to use the weapon during the ensuing fracas. In fact, the officer stated that the weapon had fallen to the sidewalk. My review of the record also fails to discern sufficient facts from which the jury could reasonably infer any unlawful purpose in defendant's carrying the weapon into the house.

In short, if unlawful purpose is an element of the crime, and no direct or circumstantial evidence indicates such unlawful purpose, the conviction cannot stand. I would therefore reverse the conviction of carrying a concealed weapon.

BISTLINE, J., concurs.

BISTLINE, Justice, dissenting.

McNary's primary contention on appeal is that the trial court erred in denying his motion to dismiss the charge of carrying a concealed weapon, the 9 mm pistol. In connection therewith McNary also contends error on the part of the trial court in admitting that pistol into evidence over an objection that there was no evidence that it was being carried illegally. Only when and because McNary's motion was denied did his counsel thereafter attempt to form a requested instruction which hopefully would guide the jury from reaching an improper verdict.

The proceedings at the making of McNary's motion, and the court's ruling, sufficiently illustrate what this case is all about:

"MR. POSEY: Your Honor, at this point I would like to move, number one, that the charge of carrying a concealed weapon be dismissed on the grounds that there is no evidence showing that the defendant carried this weapon illegally. I believe it is the law in this country that a person has the right to carry a weapon concealed or otherwise from his motor vehicle parked on his place of residence to the home in which he is living from the car to the house. I don't think there is any law against him possessing or owning such a weapon and since there is no law against him possessing it I feel there is no law against him transporting this weapon in his vehicle from one point to another and in so doing it becomes necessary for him to remove the weapon from his car

and take it to his house at some time or another, and doing so on his own premises I don't believe is a violation of the law, so I don't feel there is any evidence showing a violation of law on that particular charge.

.      .      .      .      .

"THE COURT: Do you wish to respond?

"MR. OSBORN: Your Honor, I would like to respond to defense Counsel motion regarding the concealed weapon. Certainly there is no law against carrying a weapon. When you carry a pistol the Idaho Statutes specifically require that the pistol cannot be carried in a concealed manner. The established law of concealment means putting a weapon or pistol out of the ordinary view, but within easy access and I would say the State has presented a prima facie case in this case that the defendant did in fact carry a concealed weapon.

"MR. POSEY: I think the Court can observe the package which it is in. It is a pistol scabbard and what the prosecution is saying is that every person that carries a weapon inside a scabbard while going hunting or otherwise is guilty of carrying a concealed weapon and I don't think that is the purpose of the law. I think *the purpose of the law is to keep people from walking down the street with a gun hidden in their clothing or have it hidden in such a way they can react to somebody in an illegal manner.* I don't think there is any illegal conduct shown here in relationship to the gun and I think it is necessary before there is a crime that there be such a showing. It is not illegal for a person to carry a gun and has to transport it if its protective covering is designed and made for that purpose then I see nothing wrong with that.

"THE COURT: Your motion calls for a question . . . a decision on the question of fact which is solely the province of the Jury. I am going to overrule the motion on the first issue, that being the charge of carrying a concealed weapon. The second motion I am going to

grant concerning the striking of any reference to drugs.

"MR. POSEY: May I inquire as to what the question of fact is on that. I do not remember any evidence at all saying that it wasn't on his own property.

"THE COURT: I don't think it is for the Court to say what the question of facts are. The question of fact is whether or not the statute, language of the statute is clear. They will be instructed concerning the language of the statute by the Court. There is the evidence concerning the manner which the weapon was carried in the scabbard underneath the seat or the intoxicated condition of the defendant, all questions of fact to be determined whether or not they fit within the statute.

"MR. POSEY: May I present a jury instruction to the Court on that, concerning whether it is illegal to carry it from your vehicle to your house?

"THE COURT: Not at this time.

"MR. POSEY: I mean at some time?

"THE COURT: Certainly."

McNary's counsel obviously had expected a dismissal of the concealed weapon charge. On denial of the motion he fashioned two instructions which he filed on the last day of trial which were, with their authority, and the court's ruling, as follows:

### "DEFENDANT'S PROPOSED INSTRUCTION NO. 1

"You are instructed that it is not a crime for a person to carry a pistol, revolver, or gun, concealed or otherwise, from his own automobile parked on the premises where he is living to the house in which he is living even though his premises is located within the city limits. 94 C.J.S. 483, Weapons § 5 n. 41

*Maxwell v. State*, 38 Tex. 170

*Grant v. State*, 112 Tex.Crim.[R.] 120[20], 13 S.W.2d 889

> Not Given—Covered in part
> by Instruction No. 16
> E J L
> District Judge"

"DEFENDANT'S PROPOSED
INSTRUCTION NO. 2

"You are further instructed that if the purpose is an innocent one, the carrying of a concealed weapon as a mere incident of its transportation from one place to another is not an offense.
94 C.J.S. 483, Weapons § 5 n. 41
*Maxwell v. State*, 38 Tex. 170
*Grant v. State*, 112 Tex.Crim.[R.] 120[20], 13 S.W.2d 889

Covered in Instruction No. 16
—Too broad as stated
E J L
District Judge"

As indicated by the court's endorsement, neither instruction was given. Instead the court fashioned and gave this instruction:

"INSTRUCTION NO. 16

"The carrying of a concealed weapon as a mere incident of its transportation from one place to another is not an offense *if* the purpose of transporting the same is for an innocent reason and does not go beyond the purpose of transporting the same." (Emphasis added)

McNary's motion for dismissal and his request for instructions 1 and 2 above both required of the trial court his interpretation of I.C. § 18–3302, as applied to the facts of this case, largely undisputed. Plain and simple, its language criminalizes the concealed carrying of a deadly weapon, which as an early Idaho Supreme Court observed almost eighty years ago "is of itself a pernicious practice." *In re Brickey*, 8 Idaho 597, 70 P. 609 (1902). As well-stated in one of the texts, "it has been held that the intentional doing of the prohibited act constitutes in itself a complete criminal offense, irrespective of the purpose or motive of the accused, . . ." *See also State v. Hart,*[1] 66 Idaho 217, 223, 157 P.2d 72 (1945) citing 68 C.J. § 13, p. 17. The text, C.J.S., proceeds to add that there are cases holding that:

"[I]t is an offense to have or carry a concealed or other prohibited weapon, even though the purpose in doing so was merely to exhibit it as a curiosity, or with the hope of selling it, to convey it to the buyer, or to one's home to procure cartridges for it for another's accommodation, or to return the weapon to the owner after making repairs. It may also constitute an offense to have or use the weapon in conducting a shooting gallery, in hunting or butchering, or in aiding a peace officer, or to have it for the protection of property, or of one's person, in consequence of threats of violence."

94 C.J.S. *Weapons* § 5a, pp. 482, 483. As that text goes on to point out in ensuing § 5b there are, however, different statutes, or varying judicial constructions of statutes, which do say "[that] the purpose or motive for doing the act may be material, and that it is not unlawful to have or carry a prohibited weapon with a harmless or legitimate purpose or motive." Our § 18–3302, however, is not such a statute. It does not mention intent, motive, or purpose. Nor has there ever been in over seventy years a construction by this Court which makes intent or purpose an element of the offense. The question clearly presenting itself is whether the statute is unconstitutionally void-for-vagueness, that is, does it violate the due process clause by:

"[H]olding a person 'criminally responsible for conduct which he could not reasonably understand to be proscribed.' *U. S. v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). In addition to this notion of 'fair notice or warning' the doctrine is said to require reasonably clear guidelines to prevent 'arbitrary and discriminating enforcement' and to prescribe a precise standard for the adjudication of guilt. *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). *See also*, Amsterdam, *supra*, at 76. The principle consistently followed is that 'a statute which either forbids or requires

---

1. *State v. Hart* did not involve a state statute, but a Boise City ordinance—differing from the statute in important aspects.

the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *State v. Pigge*, 79 Idaho 529, 532, 322 P.2d 703, 705 (1957); *State v. Thomas*, 94 Idaho 592, 594, 494 P.2d 1036 (1972)." *State v. Lopez*, 98 Idaho 581, 590, 570 P.2d 259, 268 (1977).

A statute facially vague or *overbroad* may be "corrected either by amendment or judicial construction." *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). It is beyond doubt that § 18–3302 is overly broad, a problem recognized in the trial court, and again in this Court. Prior to the recognition of the void-for-vagueness doctrine by this Court, and the United States Supreme Court, there were indeed judicial constructions of similar statutes which read in intent and purpose, or the other line of cases, which held that such statutes authorized prosecution and conviction for the concealed carrying of a weapon to exhibit it as a curiosity, or with the thought of selling it, or the like, as stated in the above quotation from C.J.S.

There is, however, nothing whatever in the statute to forewarn a person that he is subject to prosecution and conviction for the doing of such innocuous acts, and equally important and noteworthy here, absolutely "[no] reasonably clear guidelines to prevent 'arbitrary and discriminating enforcement' and to prescribe a precise standard for the adjudication of guilt." *State v. Lopez, supra*, 98 Idaho at 590, 570 P.2d at 268.

Before this court attempts a judicial construction of I.C. § 18–3302, it is well to keep in mind that the making of law is primarily the responsibility not of the courts, but of the legislatures of the various states. As McNary's counsel stated to the trial court,

and as we all know, and know to have been so for many years, the purpose of the statute is simply to prohibit the sneak, the robber, the assassin, and the person given to violence in private quarrels from having concealed on their persons a deadly weapon—more often the firearm or knife mentioned in the statute. Until the present case, the statute appears not to have been used vindictively against a person who obviously was not criminal. It clearly appears that McNary, like many other persons, simply believed it wise to have a pistol hidden away in his motor vehicle. Nothing in the statute warned him that he could not, nor did anything warn him that he could be imprisoned for taking the pistol from his residence to his vehicle, or vice versa. Nor is it possible to differentiate between having a protective weapon hidden away in one's home for safekeeping, safety and emergencies than hiding one away in one's vehicle for the same purposes.

It stretches the law beyond the breaking point to urge that a person hiding a gun in his home has it "on or about his person." Similarly with a motor vehicle. We should accept the statute as written. Short blocks away from this Court there is a Statehouse building where the Idaho legislators convene at least once every year for sixty to ninety days. If it is now deemed to be the will of the people, through that legislature, that hiding a weapon in a motor vehicle should be prohibited, the legislature knows how to enact such legislation—either by amending I.C. § 18–3302, or a new law. Such an amendment is not the business of the courts, other than where a statute as enacted is so overly broad that an authoritative construction is necessary to bring it within constitutional bounds. *Goguen, supra.*

Section 18–3302 of the Idaho Code was enacted by the legislature in 1909. The statute makes no mention of motor vehicles, but motor vehicles were not then unknown. In the ensuing 70 years, motor vehicles have become very much known. Here in the western part of the United States, and in Idaho in particular, the motor vehicle,

and in particular the van, the motor home, the pickup camper, and the trailer home pulled by suburban or pickup have become very much a way of life. Yet the legislature, in all the intervening years since 1909, has not amended I.C. § 18–3302, nor enacted any statute interdicting the keeping of firearms (or any weapons of defense) in motor vehicles.

Admittedly, other courts in other states largely in pre-void-for-vagueness days, have seized upon similarly worded statutes, and for various reasons [2] have strained the English language to hold that a person cannot legally keep a firearm in his vehicle, especially where it is accessible, where it is then concluded to be a weapon "about the person." That such has happened in other states in other days does not make it right or judicially sound today.

This Court should be highly mindful that the legislature, the proper forum, in over seventy years has not seen fit to enact such legislation. Legislatures of other states have done so.

The Massachusetts statute governing the carrying of dangerous weapons includes in several places the language "whoever carries on his person, or carries on his person *or under his control in a vehicle.*" Mass. Ann.Laws ch. 269 § 10 (1968) (emphasis added).

The Colorado legislature has enacted the very statute which in my opinion the Idaho legislature would enact if legislation were thought necessary, exempting from a general prohibition against concealed weapons: "[a] person in a private automobile . . . who carries a weapon for lawful protection of his or another's person or property while traveling." Colo.Rev.Stat. § 18–12–105(2)(b) (1973).[3]

As early as 1923, California's statute contained a prohibition against a person carrying certain weapons "concealed upon his person *or within any vehicle which is under his control or direction.*" 1923 Cal.Stats. ch. 339 § 5 (emphasis added). The current California statute contains two separate prohibitions, one which prohibits a person from having a weapon "concealed within any vehicle which is under his control or direction" and one which prohibits a person from carrying weapons "concealed upon his person." Cal.Penal Code § 12025(a), (b) (1970).

Kentucky exempts a weapon kept in the glove compartment. Ky.Rev.Stat. § 527.-020(4) (1975). Florida allows for transportation by excepting from the concealed weapon prohibition "any person traveling by private conveyance when the weapon is securely encased." Fla.Stat. § 790.25(3)(*l*) (1977).

Without belaboring the point, what little I say above clearly illustrates that it is the *legislatures* of the many states which have made the determination. It should be so in Idaho as well. Today, however, the Court sustains a conviction which, as Justice McFadden points out, is as likely predicated on a jury finding of guilt because McNary had the gun in his vehicle, as it is on the basis that he was carrying it to his home from his vehicle. Implicit in McNary's conviction was the trial court's interpretation that the language "on or about the person" included keeping a gun in a motor vehicle.

In my opinion this Court should also carefully observe the explicit language of the statute, being mindful of conditions that existed in 1909. "On or about" are words of art, and according to Black's Law Dictionary (4th ed. rev. 1968), constitute a phrase which originally was "used in reciting the date of an occurrence or conveyance, or the location of it, to escape the necessity of being bound by the statement of an exact date, or place." *Black's* also points out that the phrase has, in cases

---

2. The reasons are not indiscernible. The usual cases deal with the criminal element, those who have previously been convicted, or should have been.

3. The Boise City ordinance before the Court in *State v. Hart, supra,* enacted in 1936, specifical-

ly exempted from the prohibition against carrying or wearing concealed weapons persons traveling or about to travel. The ordinance also omits the vexatious "about" language found in I.C. § 18–3302.

under weapon-carrying statutes, been given the additional meaning that "about" is more comprehensive than "on." None should quarrel with that evolvement, for it is prudent that the person mingling with the public, whether in commerce, or in pleasure, or in vice, should not be allowed to escape the prohibitions of the law by concealing the weapon in a topcoat not worn but laid by on a chair, but in any event kept available. The concealed weapon might be one not conveniently kept on the person, such as a shotgun or a submachine gun—in which case a violin case might well be the manner in which it is carried "about" the person. Such are but examples of which there are many more, which may be readily acceptable as being proper prohibitions *within* the language of the statute. But a weapon kept secreted in one's own motor vehicle, or being merely moved from the home to the vehicle, or vice versa, is not "on or about" one's person so as to be within the purview of the statute any more than is a weapon of defense within one's home.

It is important to take close note of the contentions of the parties upon which the appellate issues have been drawn.

Citing *State v. Autheman*, 47 Idaho 328, 274 P. 805 (1929) and *State v. Bedwell*, 77 Idaho 57, 286 P.2d 641 (1955), McNary urges upon us that it is the province of the trial judge, not the jury, to make necessary interpretations of the law. McNary contends that "the only possible time which he could have been carrying a concealed weapon in violation of the law was when the weapon was being carried from the automobile to the house."

The State challenges that assertion, responding that it is undisputed that the gun was hidden in McNary's car both when he drove it to town and drove it back "over a public thoroughfare."

In denying the defense motion to dismiss the concealed weapon charge, the trial court stated as the State candidly sets forth in its brief, that "There is evidence concerning the manner which the weapon was carried in the scabbard underneath the seat .  .

all questions of fact to be decided by the jury." The State candidly tells us in its brief that "The judge was saying that where the gun was hidden in a case under the seat of Defendant's car, there was sufficient evidence to give rise to a jury question on the issue of concealment."

Justice McFadden's opinion points out that McNary was charged alternatively—allegedly guilty of carrying the concealed weapon in Fruitland, or, on a public highway, or both. Therefore, we must be greatly concerned with the extreme likelihood that McNary was found guilty because, as the State argues to be the case, he drove his car while having a gun which was out of sight and under the seat of his car. In direct relation thereto there is the trial court's observation that "There is evidence concerning the manner in which the weapon was carried in the scabbard underneath the seat  .   .  ." of the car. Instruction No. 16 effectively advised the jury that McNary's having a weapon under the seat of his vehicle was an offense unless it was there incidental to be taken from one place to another, and if the purpose of the taking was innocent. Although the instruction was couched in the negative, *i. e.*, that such transportation is not an offense if the purpose is innocent, the instruction required of the jury that it find McNary guilty of so carrying the gun in his car unless an innocent reason or purpose was established. It was not the State, but McNary who had reason to establish that innocent purpose, and, as so viewed, the instruction was impermissible as placing the burden upon McNary to establish his innocence. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

It little matters that the conviction *may* have resulted from a jury finding that McNary's "transportation" of the gun was the act of carrying it in his hand as he walked from his car to his residence. There, too, impermissibly placed on McNary was the burden of proving an innocent purpose. A defendant cannot be made to es-

tablish his innocence; the burden of proving guilt lies with the State.

The trial court, faced with the defendant's motion for a dismissal of the concealed weapon charge, and without any authoritative construction of I.C. § 18–3302 from this Court, was in the unenviable position of having to decide whether McNary's counsel was correct in this contention that the facts before the court at the close of the State's case were sufficient to sustain a conviction of criminal violation of that statute. It is apparent from the instructions given by the court, considered in connection with those requested and refused, that the trial court did place his construction on the statute—which did limit its overly broad context by adding innocent purpose and intent as integral parts of the statute, but leaving the burden of proving an innocent purpose on the defendant.

While the trial court is to be commended for attempting to narrow an overly broad statute, nevertheless, the motion to dismiss should have been granted and it should be the judgment of this Court that the conviction for alleged violation of I.C. § 18–3302 be set aside, and direction given that the charge be dismissed. The statute, with no prior authoritative construction, provided absolutely no warning that a person could be convicted for keeping a weapon in his vehicle, and no warning that a person could be convicted for merely walking a concealed weapon from his car to his residence, or from his residence to his car. Even though a majority of the Court were to today adopt the trial court's construction of the statute (which does not appear to be the case) the statute had not been so construed at the time of the conduct in question, and hence cannot constitutionally be given other than prospective application without violating the *ex post facto* provisions of the Constitution of Idaho and the United States. In my opinion, however, it is fundamentally wrong for this Court to amend the statute, at least without first abstaining in favor of legislative action. Nor would I vote for adoption of the construction made by the trial court and implicitly approved here which went only so far as to give judicial intimation

that a gun could be carried in a motor vehicle, if for an innocent purpose. Such a construction, other than it is constitutionally impermissible, is further questionable. It interjects into what is an outright prohibitory statute, the heretofore missing element of intent. If intent is to be by this Court declared an element, the proof of which is necessary to establish a violation of the statute, why not hold that carrying a concealed weapon while possessed of and to further a felonious intent constitutes the offense under the statute? Such would at least put the burden of proof where it belongs. *Mullaney, supra*; *Winship, supra*.

Rather than see peace officers and prosecutors boggled down with being forced to prove intent, always a difficult proposition, it would surely seem better that intent be left alone, and that the statute be so construed that it has never had, nor has now, any applicability to a man's home, and equally has never had, nor has now, any applicability to his motor vehicle.

I strongly disagree with any conclusion that there exists no justification for reading into the statute an "on-premises" exception to the application of the statute and that there is no justification for a "motor vehicle exception." The year is 1979, A.D., and motor vehicles are almost as much a part of the western way of life as the home itself. As to the "on-premises" exception, never before have there been times more demanding of armed security in the home than these.

There is also reason to conclude that the erroneous submission of the concealed weapon charge to the jury—which was much intertwined with the charge of driving while intoxicated and the charge of obstructing an officer, may have seriously prejudiced McNary on this latter charge for which he was also convicted. The other members of the Court do not seem interested in this aspect of the case, and hence further discussion would be an exercise in futility.

McFADDEN, J., concurs.