OPINION.
{¶ 1} Appellant, Thomas L. Sledge, appeals from the October 23, 2001 judgment entry of the Trumbull County Court of Common Pleas, in which appellant was sentenced for attempted murder, felonious assault, having weapons while under disability, carrying a concealed weapon, and possession of cocaine and crack cocaine.
 {¶ 2} On May 15, 2001, appellant was indicted by the Trumbull County Grand Jury on once count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2)(D) with a firearm specification in violation of R.C. 2941.145; two counts of having weapons while under disability, felonies of the fifth degree, in violation of R.C. 2923.13(A)(3)(C); one count of receiving stolen property, a felony of the fourth degree, in violation of R.C. 2913.51(A)(C); one count of carrying a concealed weapon, a felony of the fourth degree, in violation of R.C. 2923.12(A)(D); one count of attempt to commit murder, a felony of the first degree, in violation of R.C. 2923.02(A) and2903.02(B)(D), with a firearm specification in violation of R.C.2941.145; one count of possession of cocaine, a felony of the fifth degree, in violation of R.C. 2925.11(A)(C)(4)(a); and one count of possession of crack cocaine, a felony of the fourth degree, in violation of R.C. 2925.11(A)(C)(4)(b).
 {¶ 3} Appellant entered a not guilty plea at his arraignment, which was filed on May 24, 2001. On June 13, 2001, appellant changed his plea to guilty. However, on June 29, 2001, appellant changed his plea again, and his oral motion to withdraw his guilty plea was granted. The matter proceeded to a jury trial which commenced on October 1, 2001. On October 4, 2001, the jury returned a verdict of guilty on all counts except count four, receiving stolen property, on which the jury found appellant not guilty. A sentencing hearing was held on October 9, 2001. Pursuant to the October 23, 2001 judgment entry, the trial court sentenced appellant to eight years as to the felonious assault charge; six months as to each of the weapons under disability charges; six months as to the carrying a concealed weapon charge; eight years as to the attempted murder charge; and six months as to each of the possession of cocaine and possession of crack cocaine charges. In addition, appellant was sentenced to serve a three year mandatory term on the firearm specifications. The underlying terms were ordered to run concurrently to each other for a total period of incarceration of eleven years.
 {¶ 4} The facts emanating from the record are as follows: Appellant and Nathaniel Daniels III ("Daniels") were friends at one time. Daniels was the father of a child by one of appellant's cousins. However, various incidents led to the estrangement of their relationship. One incident involved a violation of trust, which allegedly occurred when appellant gave Daniels $100 to purchase "something" for appellant, however, Daniels failed to turn over the item or return the money to appellant. Another incident occurred in 1998 or 1999, when appellant was living with Olivia Johnson ("Olivia") and her children, Jamiel and Iona. According to appellant, Daniels arrived at Olivia's home clad in a mask and armed with a gun. Daniels kicked down the door, put his gun to Iona's head, and fought with Jamiel. The police were called and a report was filed. Daniels was later brought to trial regarding this incident, but was not convicted because none of the Johnsons or appellant appeared as witnesses against him.
 {¶ 5} The incident at issue in this case occurred just before midnight on January 22, 2001, at a BP gas station located at West Market Street and Tod Avenue in Warren, Ohio, Trumbull County. According to appellant's testimony, while unscrewing his gas cap, appellant saw Daniels in his Chevy Suburban in the center lane of Tod Avenue stopped at a red light heading north. The two men made eye contact, Daniels switched lanes, placed his vehicle in reverse, and pulled up next to appellant's car. From his vehicle, Daniels called appellant's name and appellant walked toward Daniels' Suburban. Appellant and Daniels exchanged words such as "what's your problem," which appellant testified was in reference to the foregoing incident which occurred at Olivia's home. According to appellant, Daniels held a handgun against his steering wheel and pointed it toward appellant. Appellant told Daniels that he had no problem with him and went to prepay for his gas. Appellant did not mention the gun to the gas station attendant because he believed the conflict had ended.
 {¶ 6} Based on appellant's testimony, he returned to his vehicle, began pumping gas, and noticed Daniels still seated in his car with his gun against the steering wheel. The two men exchanged further words and appellant believed that Daniels was going to kill him. Appellant stated at trial, "[w]ell, [Daniels] didn't jump out and try to fight me, [but] he showed me the gun. So that was basically telling me that he was gonna try to kill me." Appellant testified that he fired his own gun on an angle into the air to scare Daniels but did not aim the gun directly at him. Under cross-examination, however, appellant admitted shooting in the general direction of Daniels' Suburban. Appellant stated, "[w]ell, I wasn't that feared for my life, but I didn't want to give [Daniels] no chance to just shoot on me." Appellant also testified that when he was arrested, his loaded 9mm Luger was under the car seat.
 {¶ 7} Daniels, on the other hand, testified to a different version than appellant. Daniels stated that appellant got out of his vehicle with a pistol and started firing in Daniels' direction. Daniels hit the gas, ran his vehicle around the back of the BP station, and crashed into some poles. According to Daniels, he ducked down on his seat, which would explain why he was not hit by some of the bullets. As appellant continued to fire, Daniels escaped from his car and ran from the scene.
 {¶ 8} The BP gas station attendant, John Hughes ("Hughes") was working the cash register on the night of the shooting. Hughes testified that he saw the Suburban come into the station either as appellant was paying for gas or right after. Hughes heard three to four gunshots and hit the ground. He then heard the Suburban and another vehicle pull around the back of the station, as well as additional gunshots. When the shooting finally ended, Hughes called 9-1-1.
 {¶ 9} Sergeant Charles Sines ("Sergeant Sines") of the Warren Police Department ("WPD") arrived at the BP station and observed Daniels' Suburban in the rear of the building which was wrecked into some steel poles. Sergeant Sines testified that he noticed four to five bullet holes in the driver's side door of the Suburban and the driver's side window was shot out. Sergeant Sines discovered a lead slug on the driver's seat that appeared to have been fired into the vehicle. He also noticed bullet holes on the inside of the vehicle. Patrolman Eric Merkel of the WPD later arrived at the BP station and recovered seven rounds of 9mm Luger shells within an eight-foot radius around the gas pumps.
 {¶ 10} While on duty on January 26, 2001, at approximately 3:20 p.m., Officers Greg Hoso ("Officer Hoso") and Robert Trimble ("Officer Trimble") of the WPD, recognized appellant, who had an outstanding warrant, as a backseat passenger in a vehicle. The officers stopped the car. As Officer Hoso approached the vehicle, he noticed appellant "moving around toward his waistband." The officers then determined that appellant had a gun under his feet and arrested him. At the scene, the officers did a cursory pat down search for additional weapons, but nothing was found at that time. Officers Hoso and Trimble later conducted a more thorough search of appellant's clothing at the WPD. The officers found one plastic bag, which contained 3.21 grams of powdered cocaine and another bag that contained four grams of crack cocaine, located in appellant's jacket pockets.
 {¶ 11} Shortly after his arrest, appellant agreed to give a statement to Sergeant Jeffrey Cole ("Sergeant Cole") of the WPD. According to his statement, appellant claimed that he saw a gun in Daniels' lap when Daniels was seated in his vehicle at the BP station. Appellant contended that he used his own 9mm pistol and began firing at the side of the Suburban, before Daniels "took off." Appellant then jumped into his vehicle and drove away.
 {¶ 12} Appellant's gun and the seven shell casings, as well as the cocaine and crack cocaine, were sent to the Ohio Bureau of Criminal Identification and Investigation ("BCI") for testing. Laura Risdon ("Risdon"), a forensic scientist with BCI, tested the alleged cocaine and crack cocaine, and testified that the substances were in fact cocaine and crack cocaine. Michael Roberts ("Roberts"), also a forensic scientist with BCI, testified that the spent cartridges were fired from appellant's gun. Roberts also analyzed the slug and although he could not conclusively state that it was fired from appellant's 9mm pistol, he could not rule it out either.
 {¶ 13} Pursuant to the October 23, 2001 judgement entry, appellant filed a timely notice of appeal on October 30, 2001, and makes the following assignments of error:
 {¶ 14} "[1.] The trial court erred and abused its discretion by preventing defense counsel from eliciting testimony of the alleged victim's felony convictions, to the prejudice of appellant.
 {¶ 15} "[2.] The trial court erred by allowing [Risdon] to testify as an expert over the objection of defense counsel.
 {¶ 16} "[3.] [Appellant's] convictions for felonious assault and attempted murder are against the manifest weight of the evidence.
 {¶ 17} "[4.] [Appellant's] convictions for possession of cocaine and possession of crack cocaine are against the manifest weight of the evidence.
 {¶ 18} "[5.] [Appellant's] conviction for carrying a concealed weapon is against the manifest weight of the evidence."
 {¶ 19} In his first assignment of error, appellant argues that the trial court abused its discretion by granting appellee's motion in limine and subsequently prohibiting appellant from eliciting testimony from the alleged victim with respect to that victim's two fifth degree felony convictions for trafficking in drugs. Appellant contends that such evidence would have bolstered his claims of self-defense and would have been highly probative of his state of mind.
 {¶ 20} The determination of admit or exclude evidence is within the sound discretion of the trial court and will not reversed by an appellate court absent a showing of an abuse of discretion. State v.Rootes (Mar. 23, 2001), 11th Dist. No. 2000-P-0003, 2001 Ohio App. LEXIS 1391, at 4-5, citing Renfro v. Black (1990), 52 Ohio St.3d 27, 32. "The term `abuse of discretion' `(* * *) connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. (* * *),' State v. Adams (1980),62 Ohio St.2d 151, 157 * * *." (Parallel citations omitted.) State v.Montgomery (1991), 61 Ohio St.3d 410, 413.
 {¶ 21} Evid.R. 403(A) states that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 22} Evid.R. 609(A)(1) provides in pertinent part that "subject to Evid.R. 403, evidence that a witness other than the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the witness was convicted."
 {¶ 23} Pursuant to R.C. 2901.05, self-defense is an affirmative defense which the defendant must prove by a preponderance of the evidence. State v. Woodruff (Dec. 31, 1997), 11th Dist. No. 96-L-111, 1997 Ohio App. LEXIS 6036, at 6, citing State v. Martin (1986),21 Ohio St.3d 91, 94. "To establish self-defense, a defendant must prove the following elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger." State v. Barnes (Jan. 9, 2002),94 Ohio St.3d 21, 24, citing State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus. "Thus, the possibility of one's own retreat must be eliminated in order to establish a valid claim of self-defense."Woodruff, supra, at 7.
 {¶ 24} Pursuant to R.C. 2929.14(A)(5), fifth degree felonies are punishable by a minimum incarceration of twelve months. (Emphasis added.) According to Evid.R. 609(A)(1) and subject to Evid.R. 403, "evidence that a witness other than the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excessof one year * * *." (Emphasis added.) Therefore, in the instant matter, Daniels' felony convictions for trafficking in drugs were inadmissible pursuant to Evid.R. 609(A)(1) because fifth degree felonies are not punishable by death or imprisonment in excess of one year. See McGraw v.Englehart (Dec. 22, 1995), 11th Dist. No. 94-L-105, 1995 Ohio App. LEXIS 5725.
 {¶ 25} Appellant contends that had he been able to bring in Daniels' drug convictions, this could have helped his claim of self-defense since drug dealers carry guns and are willing to use them in their everyday affairs. We are not persuaded by this reasoning. The jury heard the testimony of both appellant and Sergeant Cole regarding the turmoil between appellant and Daniels as well as Daniels' character. Therefore, the jury was well informed of Daniel's background. Regardless, apparently appellant failed to persuade the jury that he acted in self-defense.
 {¶ 26} Appellant testified that he "wasn't that feared for [his] life, but [he] didn't want to give [Daniels] no chance to just shoot on [him]." Appellant further admitted that Daniels never fired at him. Therefore, base on Barnes and Woodruff, supra, appellant did not establish that he had a bona fide belief that he was in imminent danger of death or great bodily harm. Also, appellant had the opportunity to retreat due to the fact that he could have either left the BP station at any time or could have informed Hughes of the situation so that the police could have been contacted. Thus, appellant's first assignment of error is without merit.
 {¶ 27} In his second assignment of error, appellant argues that the trial court erred by allowing Risdon to testify as an expert over the objection of defense counsel. Appellant specifically contends that the trial court erred when it allowed Risdon to present expert testimony as to the testing and identification of narcotics where the record reveals that Risdon does not have the experience or specific training in that regard. Also, appellant stresses that Risdon failed to provide the length of time that she had practiced such skills as a professional in the field.
 {¶ 28} Prior to the introduction of expert testimony, a trial court must make a threshold determination as to the qualifications of a person testifying as an expert under Evid.R. 104(A). Scott v. Yates
(1994), 71 Ohio St.3d 219, 221. "The qualification of an expert [witness] is within the discretion of the trial court * * *." Delta Assoc. Ltd. v.Ashtabula Cty. Bd. of Revision (Dec. 11, 1992), 11th Dist. No. 92-A-1706, 1992 Ohio App. LEXIS 6194, at 5. Evid.R. 702 must be applied in order to determine whether a person is qualified to testify as an expert. State v. Miller, 11th Dist. No. 2001-P-0148, 2003-Ohio-1393, at ¶ 11. The witness need not be the "best witness" on the particular subject to qualify as an expert. Yates, supra, at 221. An appellate court will not reverse a trial court's decision to qualify an individual as an expert unless it is shown that there was an abuse of discretion. Id.
 {¶ 29} Evid.R. 702 provides that:
 {¶ 30} "A witness may testify as an expert if all of the following apply:
 {¶ 31} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 32} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 33} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *"
 {¶ 34} In the case sub judice, Risdon testified that she has been employed by BCI for eleven years. Risdon's undergraduate background that prepared her for the position as a forensic scientist includes a bachelor of science degree in criminalistics from Michigan State University, ("Michigan State") East Lansing. As part of her course work at Michigan State, Risdon interned with the Michigan State Police laboratory system. Upon being employed with BCI, Risdon completed a six-month training period under the senior chemist and as part of that training, completed a Drug Enforcement Administration ("DEA") seminar and various classes. As a forensic scientist for BCI, Risdon testified that she analyzes substances that are brought in from different police departments in Ohio for the purpose of detecting the presence of controlled substances. She is currently a member of professional organizations, including MAFS and the Ohio Association of Criminalists. Risdon has previously been qualified as an expert and has testified as an expert in the identification of narcotics.
 {¶ 35} Pursuant to Evid.R. 702(A), Risdon's testimony regarding her analysis of the controlled substances related to matters beyond the knowledge or experience possessed by lay persons. Based on Evid.R. 702(B), Risdon was qualified as an expert in detecting controlled substances due to her undergraduate training, six months specialized training at the DEA, and eleven years experience as a forensic scientist with BCI as well as her prior experience in testifying as an expert witness regarding similar matters. According to Evid.R. 702(C), Risdon's testimony that the substances were, in fact, cocaine and crack cocaine was based on her observations, training, and experience as a forensic scientist. Therefore, because all three of the following points were met under Evid.R. 702, Risdon was qualified to testify as an expert. Thus, appellant's second assignment of error is without merit.
 {¶ 36} Because appellant's third, fourth, and fifth assignments of error are interrelated, they will be addressed in a consolidated fashion. Appellant contends that his convictions for felonious assault, attempted murder, possession of cocaine and crack cocaine, and carrying a concealed weapon are against the manifest weight of the evidence.
 {¶ 37} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-15:
 {¶ 38} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 39} "`* * * [M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 40} "`In determining whether the verdict was against the manifest weight of the evidence "(* * *) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) (* * *) * * *" (Emphasis sic.)
 {¶ 41} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 42} In the case at bar, appellant contends that if he in fact intended to shoot Daniels, he had a clear opportunity to do so. However, appellant stresses that this was not his intent. Rather, he states that his only intent was to scare Daniels. Thus, appellant argues that the jury clearly lost its way in determining that he either did or intended to cause physical harm or death to Daniels. We disagree.
 {¶ 43} In order for the state to prove felonious assault, pursuant to R.C. 2903.11(A)(2)(D), the jury was required to find beyond a reasonable doubt that on January 22, 2001, in Trumbull County, Ohio, appellant knowingly caused or attempted to cause physical harm to Daniels by means of a deadly weapon, to wit, a firearm. Five bullet holes fired from appellant's gun were discovered in the driver's side door of Daniels' Suburban, the driver's side window was shot out, a lead slug was found in the driver's seat which could have been fired from appellant's gun, and bullet holes were discovered through the Suburban's seats. It is common knowledge that flying bullets can cause physical harm, not to mention death. Thus, given the physical evidence presented and pursuant to Schlee and Thompkins, supra, it cannot be said that the jury lost its way in deciding that appellant sought to cause physical harm to Daniels with a firearm.
 {¶ 44} In order for appellee to prove attempted murder, pursuant to R.C. 2923.02(A) and R.C. 2903.02(B)(D), the jury was required to find that appellant, on January 22, 2001, purposely engaged in conduct which, if successful, would have constituted or resulted in the commission of the offense of murder with respect to Daniels. The trial court instructed the jury that "[t]o do an act purposely is to do it intentionally and not accidentally. * * * The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means or weapon used, and all of the other facts and circumstances in evidence." Appellant admitted that he fired several rounds from his loaded gun in the general direction of Daniels' Suburban. Again, five bullet holes were discovered in the driver's side door, which is where Daniels was seated, and the driver's side window was shot out. Based on the foregoing facts, it is uncontroverted that appellant purposely or intentionally, rather than accidentally, pulled the trigger of his loaded pistol numerous times in Daniels' direction. It is also in the common kin that when you aim and fire a loaded gun toward someone, death is a likely result. Thus, based on Schlee and Thompkins, supra, the jury did not clearly lose its way in determining that appellant intended to cause Daniels' death.
 {¶ 45} In order to find appellant guilty of possession of cocaine and crack cocaine, pursuant to R.C. 2925.11(A)(C)(4)(a)(b), the trial court informed the jury that it needed to find beyond a reasonable doubt that appellant, on the day of his arrest, knowingly obtained, possessed, or used cocaine and crack cocaine in amounts of less than five grams each.
 {¶ 46} According to Terry v. Ohio (1968), 392 U.S. 1, 24, a police officer is justified in conducting a limited search for weapons, if the officer has made a valid investigative detention of a suspect and has a reasonable belief that the suspect is armed and presently dangerous to the officer or to others. When a police officer is conducting a lawfulTerry search for weapons, he may "`seize nonthreatening contraband when its incriminating nature is "immediately apparent" to the searching officer through his sense of touch.'" State v. Mihely, 11th Dist. Nos. 2001-A-0083 and 2001-A-0084, 2002 Ohio 6939, at ¶ 12, citingMinnesota v. Dickerson (1993), 508 U.S. 366, 375.
 {¶ 47} In the instant matter, when Officers Hoso and Trimble arrested appellant, Officer Hoso conducted a pat down search of appellant which produced no suggestion of an apparent weapon. Also, because it was not immediately apparent to Officer Hoso that appellant had drugs on his person at the scene, the search ended, pursuant to Terry and Dickerson, supra. However, in furtherance of appellant's booking procedures at the WPD, Officers Hoso and Trimble conducted a full pat down search of appellant. At that time, the officers discovered two bags, one which contained 3.21 grams of powdered cocaine and another which contained four grams of crack cocaine, in separate pockets of appellant's jacket.[1]
Although appellant testified that "[he] just recognize[d] the powder," he later stated that the drugs were not his and that Officers Hoso and Trimble planted them on him. Appellant testified to the effect that Officer Hoso included Officer Trimble in on his plot and stated that "Hoso always, mainly just Hoso, [is] always harassing me." We are not persuaded by appellant's argument.
 {¶ 48} Cocaine and crack cocaine in amounts of less than five grams each were found in separate pockets of appellant's jacket when the officers conducted a full pat down search of appellant at the WPD. It was clearly reasonable for the jury to believe that during the first cursory pat down search at the scene, two bags of such small size and weight, which were in separate pockets of appellant's winter jacket, may not have been immediately apparent to Officer Hoso at that time. Also, appellant even testified that he recognized the contents of one of the bags found in his jacket pocket. Thus, the jury did not clearly lose its way, based on Schlee and Thompkins, supra, and pursuant to R.C.2925.11(A)(C)(4)(a)(b) by finding beyond a reasonable doubt that appellant knowingly obtained or possessed cocaine and crack cocaine in amounts of less than five grams each.
 {¶ 49} In order for appellee to prove that appellant was carrying a concealed weapon, pursuant to R.C. 2923.12(A)(D), the jury needed to find beyond a reasonable doubt that on the day of his arrest, appellant knowingly carried or had a deadly weapon, to wit, a firearm that was loaded or for which appellant had ammunition ready at hand and the deadly weapon was concealed on his person or ready at hand. Appellant does not dispute that when he was arrested he was carrying a deadly weapon, namely, a loaded 9mm Luger. Rather, appellant disputes the jury's finding that the weapon was concealed.
 {¶ 50} "`[A] weapon need not be totally hidden from observation in order to render it concealed within the meaning of the statute.'" Statev. Potts (Sept. 25, 1998), 11th Dist. No. 97-T-0038, 1998 Ohio App. LEXIS 4542, at 6, quoting State v. Coker (1984), 15 Ohio App.3d 97, 98. "`(A) weapon is concealed if it is so situated as not to be discernable by ordinary observation by those near enough to see if it were not concealed who would come into contact with the possessor in the usual associations of life, but that absolute invisibility is not required * * *.'" Potts, supra, at 6-7, quoting Shipley v. State (Md.App. 1966), 243 Md. 262,269. Thus, even a partially concealed weapon constitutes a "concealed" weapon within the meaning of R.C. 2923.12. See Coker, supra, at 98.
 {¶ 51} In the instant matter, Officers Hoso and Trimble saw appellant "moving around toward his waistband." Officer Hoso testified that he observed appellant "reach towards his feet area," and "it looked as if [appellant] was either trying to hide [the gun] with his feet or kick it underneath the seat in front of him." Officer Trimble testified that "[appellant] leaned forward and had his hands down toward his feet. And at that time, we found a loaded weapon." Thus, Officers Hoso and Trimble viewed appellant's actions, which were consistent with hiding a gun. Also, appellant even testified that he possessed the loaded gun and stated that "[i]f [Officer] Hoso had seen it, it would have been impossible [because] it was under the [passenger] seat." Thus, appellant himself provided adequate evidence, if believed, that would have satisfied the elements of this particular crime. As such, pursuant to R.C. 2923.12(A)(D), appellant knowingly had a loaded deadly weapon, which was concealed. Also, based on Potts, Coker, and Shipley, supra, appellant's weapon was concealed because it was not discernable by "ordinary observation." Thus, pursuant to Schlee and Thompkins, supra, the jury did not clearly lose its way by determining that appellant was carrying a concealed weapon. Therefore, appellant's third, fourth, and fifth assignments of error are without merit.
 {¶ 52} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
JUDITH A. CHRISTLEY, J., and DIANE V. GRENDELL, J., concur.
[1] Each bag is relative in size to a wadded up tissue.