**Robert A. POTTS, Plaintiff–Appellant,**

v.

**M.E. HILL, Ohio State Patrol Trooper, Defendant–Appellee.**

No. 02–3651.

United States Court of Appeals, Sixth Circuit.

Oct. 2, 2003.

Before KENNEDY, GUY, and DAUGHTREY, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiff Robert A. Potts appeals the district court's order granting summary judgment to defendant M.E. Hill. Plaintiff argues that the district court erred when it determined that defendant's search of plaintiff's vehicle did not violate plaintiff's constitutional rights and that, even if there

were a violation, defendant was entitled to a qualified immunity defense.

## BACKGROUND

The events in question took place on March 2, 1996. Defendant, an Ohio State Highway Patrol Trooper, observed plaintiff driving an automobile at 84 M.P.H. in an area where the posted speed limit was 55 M.P.H. Defendant gave chase and eventually stopped plaintiff. After plaintiff pulled his vehicle to the side of the roadway, defendant approached it on the passenger side to avoid being struck by passing motorists. The account of what happened next is in controversy. According to plaintiff and the Ohio Court of Appeals, "when Trooper Hill approached Plaintiff's vehicle, he observed what appeared to be the handle of a knife protruding from beside the bucket seat in which appellant was sitting. The blade of the knife appeared to be wedged between the bucket seat and the console that separated the two front seats. *State v. Potts*, 1998 WL 684158, at *1 (Ohio App. Sept. 25, 1998). As he customarily did, Trooper Hill asked appellant if there were any weapons in the vehicle." According to defendant and the U.S. District Court, "while citing Plaintiff for a speeding violation, Hill noticed Potts was attempting to cover something with his right leg. This observation prompted Hill to inquire about weapons in the vehicle." *Potts v. Hill*, No. 4:99 CV 1642, slip op. at 1 (N.D.Ohio May 14, 2002).

Although there are different accounts of what led up to the question about the weapons in the vehicle, the rest of the facts are uncontroverted. Plaintiff responded that he did have a weapon and handed over a 4½ inch blade knife that was partially concealed near his right leg. Defendant asked plaintiff whether he had any other weapons, to which plaintiff responded "no." As he was reaching to get the first knife, however, defendant noticed a second knife in the pocket attached to the back of the passenger seat. Since this pocket was made of netting, defendant could clearly see that it contained a large sheathed buck knife. Upon this discovery, defendant directed plaintiff to exit the vehicle and escorted him to the back seat of the police cruiser.

Defendant then searched the suspect vehicle and discovered a third knife (L-shaped with a three-inch blade) in the armrest console. All three knives were confiscated. As he had intended during the entire stop, defendant issued plaintiff a receipt for the knives and a summons citing plaintiff for speeding and carrying a concealed weapon, and allowed plaintiff to leave in his vehicle.

On March 5, 1996, plaintiff was formally charged in an Ohio state court with one count of carrying a concealed weapon in violation of Ohio Rev.Code § 2923.12(A). Plaintiff filed a motion to suppress as evidence the three knives, claiming the placement of the first two knives did not give rise to any cognizable crime and, thus, the search which revealed the third knife was unlawful. The trial court held a suppression hearing on October 24, 1996 and overruled the motion. On January 13, 1997, plaintiff changed his initial plea to one of no contest with respect to the charges of carrying a concealed weapon and speeding as a result of the plea bargain reached with the state. Plaintiff was found guilty, fined $50 and sentenced to sixty days in jail. The jail term was suspended, and plaintiff was placed on probation for one year. The Ohio Court of Appeals reversed the conviction on the weapons charge, and entered an acquittal. *State v. Potts*, 1998 WL 684158, at *4.

Plaintiff then filed a suit in state court against defendant under § 1983 for violating his constitutional rights under the

Fourth and Fourteenth Amendments and for state claims sounding in "false arrest" and "malicious prosecution." The action was then removed to the U.S. District Court (N.D.Ohio) on "federal question" grounds. The district court granted defendant's Civil Rule 12(b) motion to dismiss on statute of limitation grounds and, declining to exercise supplemental jurisdiction, remanded the state claims to the Trumbull County Common Pleas Court for further disposition. Plaintiff appealed. This Court reversed the district court judgment and remanded the case for consideration of the merits of plaintiff's § 1983 claim arising out of the traffic stop. *Potts v. Hill*, No. 00–3082, 17 Fed. Appx. 302, 2001 WL 966491 (6th Cir. Aug. 16, 2001). On remand, defendant filed an Answer to the Complaint and then moved for Rule 56 summary judgment. Per Memorandum Opinion entered 5/14/02, the district court granted the motion on "no constitutional violation" and "qualified immunity" grounds, and entered a final judgment for defendant.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *Terry Barr Sales Agency, Inc. v. All–Lock Co.*, 96 F.3d 174, 178 (6th Cir.1996). In deciding a summary judgment motion, this court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We must, however, view the evidence and draw all "justifiable inferences" in the light most favorable to the non-movant. *Id.* Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ..." *Anderson*, 477 U.S. at 247–48 (emphasis in original). Mixed questions of law and fact are reviewed *de novo*. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999) (*en banc*).

## ANALYSIS

The doctrine of qualified immunity shields public officials acting within the scope of their official duties from civil liability. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Qualified immunity" is an "an *immunity from suit* rather than a mere defense to a liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The Supreme Court has insisted that the lower courts resolve questions of qualified immunity "at the earliest possible stage in the litigation." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)). In *Saucier*, the Court has set forth a two-prong test that must be applied to a qualified immunity analysis. *Id.*

First, a court must consider whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutionally-protected right. *Saucier v. Katz*, 533 U.S. at 201; *See also Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir.2001). If the plaintiff fails to prove an existence of a constitutional violation, then the court need not address the issue of qualified immunity because the plaintiff's constitutional claim has already failed. *See, e.g., Houston v. Clark County Sheriff Deputy*, 174 F.3d

809, 815 (6th Cir.1999). Second, if such a violation is found, the court must ask whether a reasonable official would, at the time the act was committed, understand that his conduct violated that right. *Saucier*, 533 U.S. at 201–02; *Comstock*, 273 F.3d at 702. Government officials will be shielded from liability for civil damages as long as their conduct does not amount to a violation of clearly established rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818. For a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202. Qualified immunity is an effective defense for "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

### 1. *Did defendant's conduct violate a constitutional right?*

The district court found that defendant did not violate plaintiff's constitutional rights. *Potts v. Hill*, No. 4:99 CV 1642, slip op. at 6. On this appeal, plaintiff argues that in so finding, the district court erred in two separate ways. First, plaintiff argues that the doctrine of "issue preclusion" mandates the finding of a "constitutional violation" based on the decision of the Ohio Court of Appeals. Second, plaintiff argues that even without applying the "issue preclusion" doctrine, the district court erred when it independently determined that no constitutional violation took place. As discussed below, we reject the first argument and choose not to decide the second.

### a. Is the issue precluded by the Ohio Court of Appeals' finding that the conviction was invalid?

█ Plaintiff argues that the district court erred by not according a state court criminal proceeding finding a preclusive effect in a subsequent § 1983 civil action on the issue of the constitutionality of defendant's actions.

Courts distinguish between two types of preclusion claims: "issue preclusion" and "claim preclusion." *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). The term "issue preclusion"[1] refers to "the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Id.* The term "claim preclusion" refers to "the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Id.* In this case, plaintiff relies only on the doctrine of "issue preclusion" to argue that defendant should not be allowed to defend the constitutionality of his actions in a federal district court since the Ohio Court of Appeals already found a constitutional violation on a direct appeal of plaintiff's criminal conviction arising from the same transactional facts.

In support of this argument, plaintiff relies solely on *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In *Allen*, the Supreme Court held that a state court decision on a federal constitutional claim raised in state criminal proceedings is entitled to preclusive, "collateral estoppel" effect in a subsequent § 1983 civil action. *Id.* at 104. The *Allen* case, however, is inapposite. In *Allen*, the Supreme Court prevented the *§ 1983 plaintiff*[2] from relitigating a federal constitu-

---

**1.** Also known as "collateral estoppel."

**2.** A defendant in the criminal action.

tional claim. The case at bar involves the attempt by the plaintiff to bar a *§ 1983 defendant* from litigating an issue the defendant never had the opportunity to litigate in the first place. The Court went to great length to note that "one general limitation the Court has repeatedly recognized is that the concept of collateral estoppel cannot apply when the *party against whom* the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Allen,* 449 U.S. at 95 (emphasis added). We must therefore examine whether an acquitted criminal defendant can rely on the doctrine of "issue preclusion" to prevent a police officer in a subsequent § 1983 civil action from arguing that despite the state court's acquittal, no "constitutional violation" took place during the arrest.

Whenever a party asks a federal court "to give preclusive effect to a state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered in determining whether and to what extent the prior judgment should be given preclusive effect in a federal action." *In re Fordu,* 201 F.3d 693, 703 (6th Cir.1999) (citing 28 U.S.C. § 1738; *Migra,* 465 U.S. at 81; *In re Calvert,* 105 F.3d 315, 317 (6th Cir.1997); *Hospital Underwriting Group, Inc. v. Summit Health, Ltd.,* 63 F.3d 486, 494–95 (6th Cir.1995)). Under Ohio law, "issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *Metro-Health Med. Ctr. v. Hoffman–LaRoche, Inc.,* 80 Ohio St.3d 212, 685 N.E.2d 529, 533 (1997) (citation and internal quotations omitted). According to the Ohio Supreme Court, issue preclusion applies when a fact or issue "(1) was actually and directly litigated in the prior action; (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action." *Thompson v. Wing,* 70 Ohio St.3d 176, 637 N.E.2d 917, 923 (1994). To determine whether privity between parties exist, Ohio courts " 'look behind the nominal parties to the substance of the cause to determine the real parties in interest.' " *Fort Frye Teachers Ass'n v. State Employment Relations Bd.,* 81 Ohio St.3d 392, 692 N.E.2d 140, 144 (1998) (quoting *Trautwein v. Sorgenfrei,* 58 Ohio St.2d 493, 391 N.E.2d 326, 331 (1979)).

The district court found that the issue preclusion doctrine does not apply in this case because the third prong of the *Thompson* test, privity, was absent in this case. *Potts v. Hill,* Case No. 4:99 CV 1642, at 4. The district court noted that "privity exists where one person's interest reflects that of another to such an extent that they represent the same legal right." *Id.* at 4–5 (citing *In re Fordu,* 201 F.3d at 705) (citing *Deaton v. Burney,* 107 Ohio App.3d 407, 669 N.E.2d 1, 5 (1995)). In the case at bar, the court held that defendant's interests in a § 1983 civil action were not the same as those of a state in a criminal proceeding and that defendant had no control over the trial strategy during the criminal proceeding. The court therefore ruled that issue preclusion was inapplicable to this case. *Id.* at 5.

Although the Ohio Supreme Court has not addressed this specific question and this Court has not addressed it in a reported opinion,[3] a number of our sister Circuits

---

**3.** *See, e.g., Burda Bros., Inc. v. Walsh,* No. 00–1418, 2001 WL 1254808, at *6, 22 Fed.Appx. 423 (6th Cir. Oct. 12, 2001) (citing two other unpublished opinions from this Court and holding that § 1983 "plaintiffs may not use collateral estoppel offensively to preclude the relitigation of the validity of the search warrant ...")

have already interpreted state laws governing issue preclusion that are similar to Ohio's to mean that issue preclusion cannot be used against officers in a subsequent civil action because the officers were neither parties nor in privity with the state in the preceding criminal action. *See, e.g., Turpin v. County of Rock,* 262 F.3d 779, 782–83 (8th Cir.2001) (applying Nebraska law); *McCoy v. Hernandez,* 203 F.3d 371, 375 (5th Cir.2000) (applying Texas law); *Kinslow v. Ratzlaff,* 158 F.3d 1104, 1106–07 (10th Cir.1998) (applying Oklahoma law); *Booker v. Ward,* 94 F.3d 1052, 1057 (7th Cir.1996) (applying Illinois law); *Davis v. Eide,* 439 F.2d 1077, 1078 (9th Cir.1971) (applying California law). We therefore conclude that under Ohio law, a § 1983 plaintiff cannot use issue preclusion against his arresting officers in evaluating the constitutionality of the arrest even if the state court that acquitted the plaintiff found that a constitutional violation took place.

b. **Did defendant's actions amount to a violation of a constitutional right?**

Since the district court refused to exercise supplemental jurisdiction over related state claims of "false arrest" and "malicious prosecution," a decision that is not before us on appeal, we limit our review of plaintiff's § 1983 claim to an alleged violation of his Fourth and Fourteenth Amend-

ments right to be free of unreasonable search and seizure.

The Ohio Eleventh District Court of Appeals found that under Ohio Rev.Code § 2923.12(A)[4] a partially concealed weapon is not "concealed" for the purposes of the statute. *State v. Potts,* 1998 WL 684158, at *4. It further held that since defendant could clearly see the first knife upon approaching plaintiff's car, he lacked any basis for the search.[5] In holding that the first knife was not a concealed weapon, the Eleventh District distinguished three precedents[6] by stating: "[t]he common thread of [these cases] is that in each case the weapon was discovered only after the driver and/or passengers had exited the vehicle. These three cases did not involve an officer making a plain view seizure at the same time that the weapon was allegedly concealed." *State v. Potts,* 1998 WL 684158, at *4. Since the second knife was clearly in plain view, the Eleventh District stated that:

Because the officer here had no probable cause to believe that appellant had committed the offense of carrying a concealed weapon, he did not have the authority to arrest appellant, and then to search incident to a lawful arrest. Thus, the subsequent search of the vehicle that led to the discovery of the third knife was also improper, and the evidence of the third knife must also be suppressed.

4. The section provides: "No person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordnance." OHIO REV.CODE ANN. § 2923.12(A) (West 2003).

5. The district court disagreed with this finding of fact, stating instead that defendant merely noticed that plaintiff was attempting to cover something with his right leg while citing him for a speeding violation. Since this is an appeal of a grant of summary judgment, we will view the evidence in light most favorable to plaintiff and assume that defen-

dant saw a partially concealed knife on approach.

6. The Eleventh District included in its discussion two Ohio Court of Appeals' cases and a Maryland Appellate decision that they relied on. *State v. Potts,* 1998 WL 684158, at *2–3 (analyzing *State v. Almalik,* 41 Ohio App.3d 101, 534 N.E.2d 898 (1987); *State v. Coker,* 15 Ohio App.3d 97, 472 N.E.2d 747 (1984); *Shipley v. State,* 243 Md. 262, 220 A.2d 585 (1966)).

*Id.* The district court, relying on two earlier cases from Ohio Courts of Appeals that held that a "partially concealed" weapon is a "concealed weapon" for the purposes of the statute, found that the Eleventh District departed from the existing interpretations of the statute without adequately distinguishing them, thereby creating a "split in the Ohio appellate courts in its interpretation of the concealed weapon statute." *Potts v. Hill,* No. 4:99 CV 1642, slip. op at 5 (relying on *State v. Almalik,* 41 Ohio App.3d 101, 534 N.E.2d 898, 902–03 (1987)) (finding that a gun was "concealed" for the purposes of the Ohio statute despite the fact that the butt of the gun was in plain view and citing a number of cases for the proposition that "a partially concealed weapon is 'concealed' within the meaning of R.C. 2923.12") (citations omitted) and *State v. Coker,* 15 Ohio App.3d 97, 472 N.E.2d 747, 748–49 (1984) (finding that a trier of fact could reasonably conclude that a sawed-off shotgun was a concealed weapon in an automobile despite the fact that the butt of the gun was plainly visible to the police officer). Having thus independently determined that defendant's actions were constitutional, the district court refused

> to extend the consequences of [Eleventh District's] decision by now imposing § 1983 liability for what amounts, in the Court's view, to a constitutional arrest and warrantless search based on the weapons statute. To hold otherwise

would require law enforcement officers to determine in which state appellate district she is in order to effect an arrest and subsequent search that avoids § 1983 liability.

*Potts v. Hill,* No. 4:99 CV 1642, slip op. at 6.

Our independent review of the relevant decisions from the Ohio appellate courts leads us to conclude that the Eleventh District's conclusion that a partially concealed weapon is not "concealed" for the purposes of the statute was reached at least once before by the Tenth District. *See generally State v. Graham,* 1998 WL 63550, at *6–7 (Ohio App.1998).[7] After analyzing a number of cases that involved the issue of concealment, the Tenth District concluded that:

> A review of the cases where concealment inside a vehicle was established,[8] that is, where the jury could conclude that the weapon was not discernible by ordinary observation, reveals substantial differences from the instant case, in that: 1) the weapon in question was either not visible from outside the vehicle, or was not visible until some other object was moved; and/or 2) the party who observed the weapon could not concretely identify it as such upon first sight ... In contrast, a review of the cases where concealment inside a vehicle was not established[9] reveals, as in the instant case, that the weapon was either visible from the outside of the vehicle

---

**7.** We also note that since defendant made the search in 1996, he, of course, did not have the benefit of the *Graham* decision at the time of the search. Nor did he, obviously, have the benefit of the Eleventh District's opinion in the present action.

**8.** *State v. Davis,* 15 Ohio App.3d 64, 472 N.E.2d 751 (1984); *State v. Almalik,* 41 Ohio App.3d 101, 534 N.E.2d 898 (1987); *State v. Coker,* 15 Ohio App.3d 97, 472 N.E.2d 747 (1984); *State v. Giles,* No. CR–271655, 1994 WL 189590 (Ohio App.May 12, 1994); *State v.*

*Hussing,* No. CR–266705, 1994 WL 24289 (Ohio App. Jan. 27, 1994); *State v. Herda,* No. 94 CR 304, 1995 WL 768603 (Ohio App. Nov. 2, 1995); *State v. Lott,* No. CR 89 11 2036, 1990 WL 163875 (Ohio App. Oct. 24, 1990); *State v. Broadus,* No. CR–204026, 1987 WL 29449 (Ohio App. Dec. 17, 1987); *State v. Bowman,* 79 Ohio App.3d 407, 607 N.E.2d 516 (1992).

**9.** *State v. Maloney,* 14 Ohio App.3d 109, 470 N.E.2d 210 (1984); *State v. McBride,* No. CR–

without the need to move other objects and/or could immediately be identified as a weapon upon first sight.

*State v. Graham*, 1998 WL 63550, at *6–7. Recognizing that there is a split among Ohio Courts of Appeals, we cannot predict whether the Ohio Supreme Court would hold that, as a matter of law. the first knife was or was not "concealed" under Ohio Rev.Code 2923.12(A).[10] We do not decide this issue in the present case because, as explained in the next section, we believe that defendant acted as any reasonable officer would and that he did not violate a clearly established constitutional right.[11] Our decision not to reach the merits of this issue is buttressed by the lack of clear factual evidence about the degree to which the knife was or was not partially concealed. Based on defendant's affidavit, he may have been able to identify the knife upon approach. However, we have no testimony about whether an ordinary person would have been able to identify the object that was wedged between the bucket seat and the console, especially since the blade was definitely concealed.

### 2. *If there was a constitutional violation, does "qualified immunity" apply?*

■ Assuming *arguendo* that a constitutional violation did occur, we now examine whether defendant is entitled to a qualified immunity defense. The district court concluded that plaintiff "has presented no viable constitutional theory for liability against Hill." *Potts v. Hill*, Case No. 4:99 CV 1642, slip op. at 7. As discussed above, whether plaintiff's constitutional rights were violated is an open question since the Ohio courts have simply failed to provide its police officers with adequate guidance in this area of law.[12] The appellate cases are replete with statements condoning defendant's conduct and his interpretation of the Ohio statute. *See, e.g., State of Ohio v. DiNickle*, 1993 WL 545142, at *5 (Ohio App.1993) (stating that "the fact that a small portion of the shotgun was protruding from the blanket does not require a finding that the weapon was not concealed ... The fact that Officer Altonen could recognize the protruding two inches of the butt similarly does not require a finding that the weapon was not concealed, in light of his testimony regarding his extensive experience with weapons.") *See also State v. Almalik*, 534 N.E.2d at 902–03 ("This court has held that a partially concealed weapon is 'concealed' within the meaning of 13 R.C. 2923.12.") (citations omitted). It does not appear that the State of Ohio had definitively resolved the question of partially concealed weapons even in the

196240, 1986 WL 10834 (Ohio App. Sept. 25, 1986).

**10.** If it was not deemed to be "concealed," then defendant would have lacked the probable cause to continue with his search as plaintiff argues (and the Eleventh District concluded). If it was deemed to be "concealed," then defendant had the probable cause to continue with his search.

**11.** Because it is not necessary for our holding, we also do not address the defendant's argument that the search was constitutional because defendant had reasonable, articulable suspicion that plaintiff was armed with a weapon that could be used to harm defendant during his encounter with plaintiff. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Since none of the lower courts had addressed this exception to the warrant requirement, preferring instead to concentrate on the "search incident to a lawful arrest" exception, we note that if this argument were accepted, it would provide an independent basis for holding that this warrantless search was constitutionally permissible.

**12.** Although both the *Graham* and the *Potts* courts developed a theory for what constitutes a "concealed weapon," none of the cases they cited relied on this theory.

decisions made after the search here, let alone at the time of the arrest. Therefore, since plaintiff cannot even now prove that the narrower definition of "concealed" weapons in Ohio is "clearly established," *Harlow*, 457 U.S. at 818, it is beyond doubt that defendant is shielded from any liability by the theory of "qualified immunity" for his conduct in 1996. He neither was "plainly incompetent," nor did he "knowingly violate the law."

## CONCLUSION

In sum, we do not reach the question of whether a partially concealed weapon constitutes a "concealed weapon" for the purposes of § 2923.12(A). We affirm the district court's decision to grant defendant's summary judgment motion on the qualified immunity grounds.